THE STATE OF KANSAS v. JAMES M. BUNKER.

| 38 | 737 |
| 40 | 150 |
| 40 | 539 |

UNORGANIZED COUNTY, *Afterward Organized; Perjury; Jurisdiction.* It is alleged that on July 15, 1885, one B. committed willful and corrupt perjury in Lane county, in making oath to an affidavit which was afterward filed and used by him in a divorce proceeding pending in Ness county, between him and his wife. At the time of subscribing and making oath to the affidavit, Lane county was unorganized and attached to Ness county for judicial purposes, and was thereby a municipal township of Ness county. Subsequently, and before any criminal proceedings were commenced against B., Lane county was properly organized, and entitled to a district court. *Held,* That the district court of Lane county had jurisdiction of the offense; and *further held,* that the defendant could not be legally tried and convicted of the offense in the district court of Ness county, without his consent and over his objection.

*Appeal from Ness District Court.*

ON May 18, 1887, there was filed in the district court of Ness county the following information, omitting caption and verification:

"I, Silas W. Porter, the undersigned, county attorney of said county, in the name, by the authority and on behalf of the state of Kansas, come now here and give the court to understand and be informed that on the 15th day of July, 1885,

47 — 38 KAS.

in said county of Ness and state of Kansas, one James M. Bunker did then and there unlawfully and feloniously, in a certain action then pending in the district court, in and for said Ness county, wherein said James M. Bunker was plaintiff and Cecilia Bunker was defendant, brought for the purpose of obtaining a divorce in behalf of said James M. Bunker, come in his own proper person, before one Fred. H. Kurtz, a notary public, duly and legally commissioned to act as such, in and for said county of Ness, and to administer oaths as provided by law, and to the said Fred. H. Kurtz, as notary public, did then and there present an affidavit in writing, in words and figures, and to the tenor as follows, to wit:

" 'STATE OF KANSAS, COUNTY OF NESS, ss.: I, James M. Bunker, first being duly sworn, do on my oath depose and say; that I am the plaintiff in the foregoing action of James M. Bunker *versus* Cecilia Bunker; that this is an action for divorce, and that I am unable to get personal service upon said defendant, as she is not a resident of the state of Kansas; that this affiant has made diligent search for the whereabouts of said defendant, and has not been able to find the same; that this affiant asks to be permitted to serve notice by publication upon said defendant, as by law made and provided.　　　JAMES M. BUNKER.

" 'Subscribed and sworn to before me, this 15th day of July, 1885.
　(Seal.)　　　　　　　FRED. H. KURTZ, *Notary Public.*
(Com. expires April 9th, 1889.)'

"That said James M. Bunker read the said affidavit in the words and figures and to the tenor as aforesaid, and well knowing the contents thereof, before the said Fred. H. Kurtz, notary public, signed the same as aforesaid, with his own name, and then and there took a solemn oath administered then and there to him by the said Fred. H. Kurtz, as notary public, as provided by law, that the matters and allegations therein contained were the truth, the whole truth, and nothing but the truth; he, the said Fred. H. Kurtz, notary public as aforesaid, then and there having full power to administer said oath, and the said James M. Bunker then and there intending and designing to file said affidavit as aforesaid, in said action for divorce, said affidavit being the usual affidavit provided by law where an action is brought in said state of Kansas, by a resident thereof, against a non-resident of the state, to obtain a divorce, and where personal service of summons cannot be made upon the defendant within said state of Kansas.　And afterward, to wit, on the same day, the said James M. Bunker filed in said cause, in said district court, said affidavit with his petition in said cause, praying for a divorce from said Cecilia Bunker, and that said affidavit was then and there, and by virtue of the statute in such case made and provided, became material to the issues and matters to be tried in said district

court in said action for divorce as aforesaid; and summons by publication was upon said affidavit made as provided by law in said action; and that afterward upon the trial of said action, at the September term of said district court, in the year 1885, the said James M. Bunker obtained from said court, upon said service made upon said affidavit, a decree of divorce from the said Cecilia Bunker, the said Cecilia Bunker being then and there his lawfully wedded wife; whereas said defendant Cecilia Bunker, in truth and in fact did then, on said 15th day of July, 1885, and at all times theretofore, and ever since has, resided and did reside in Sumner county, in said state of Kansas, and within about four miles of said James M. Bunker's place of residence — the said Cecilia Bunker residing all of the time aforesaid at her father's house, where said James M. Bunker had a short time before lived with her as her husband, and where said James M. Bunker had frequently seen her, and left her, all of which the said James M. Bunker, then and there on the 15th day of July, 1885, and all times thereafter, well knew; and that he, the said James M. Bunker, then and there, on the said 15th day of July, 1885, falsely, willfully, maliciously and corruptly swore to said affidavit as aforesaid; he, the said James M. Bunker then and there, and at the time of obtaining said divorce as aforesaid, well knowing that said affidavit was false, and by him, the said James M. Bunker, falsely, willfully, maliciously and corruptly sworn to as aforesaid; and that the said James M. Bunker in the manner and form aforesaid, did then and there unlawfully, feloniously, falsely, willfully, maliciously and corruptly commit the crime of perjury, as aforesaid, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

The defendant was tried at the adjourned September term, 1887, found guilty, and sentenced to the penitentiary for the term of three years. He appeals.

*Stidger & Redd*, for appellant.

*S. B. Bradford*, attorney general, and *Silas W. Porter*, county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: James M. Bunker, aged thirty-seven, seduced Cecilia Monroe, aged fifteen, in Sumner county, in this state, in 1883. At the time, they were engaged to be mar-

ried; but soon after, Bunker went to North Carolina, where he remained six months. While he was absent, Cecilia was delivered of a child. Upon Bunker's return to the state, in the spring of 1884, the father of Cecilia brought an action against Bunker for the seduction of his daughter. Bunker married Cecilia, at Wellington, on May 27, 1884, and the civil proceedings brought against him were dismissed. All the parties lived near Milan, in Sumner county. After the marriage, Bunker and his wife lived about six months at the house of Mr. Monroe, the father of his wife. He had a farm in the neighborhood. Late in the fall of 1884, Bunker and his wife ceased to live together, Bunker remaining at his farm until the spring of 1885. Mrs. Bunker continued to live at her father's house. In the spring of 1885, Bunker went to Lane county, in this state, to reside. On the 23d day of September, 1885, he obtained a decree of divorce from Cecilia his wife, in the district court of Ness county. In the action, no personal service was made upon the wife. On July 15, 1885, Bunker made an affidavit before Fred. H. Kurtz, a notary public of Ness county, that he was unable to obtain personal service upon his wife, as she was not a resident of the state; and that he had made diligent search to ascertain her whereabouts, but had not been able to find her. On the date of the affidavit, he filed the same in the district court of Ness county, with his petition for the divorce. At the date of the affidavit, his wife was living in Sumner county, where he had left her. On May 13, 1887, an information was filed by the county attorney of Ness county against Bunker, charging him with perjury, in willfully, falsely and corruptly making oath to the affidavit of July 15, 1885. (Comp. Laws of 1885, ch. 31, § 148.)

Fred. H. Kurtz, before whom Bunker made the affidavit, was commissioned a notary for Ness county on April 9, 1885. He resided in Lane county, and the affidavit was subscribed and sworn to in that county. At that time Lane county, being unorganized, was attached to the county of Ness for judicial purposes. (Laws of 1881, ch. 99, § 5.) By the provisions

of section 134, ch. 24, Comp. Laws of 1885, when an unorganized county is attached to an organized county for judicial purposes, it constitutes and forms one of the municipal townships thereof, and is subject to the same regulations and liabilities as other townships of the county. Its electors are deemed legal electors of the county to which it is attached. The officers of the county to which it is attached have the same powers and perform the same duties in reference to the attached county as they have over the municipal townships of their own county.

The trial of this case was commenced in Ness county, on November 7, 1887. At that time Lane county had been properly organized, the date of its organization being July 15, 1886, one year after the making of the affidavit. The jury returned a verdict of guilty against Bunker as charged in the information, and he was sentenced to be imprisoned in the penitentiary of the state at hard labor for the term of three years. Judgment was also rendered against him for the costs. From the judgment he appeals.

Bunker should have been prosecuted in Lane county, where his offense was committed, not in Ness county. By the common law, the trial of all crimes was required to be in the county where they were committed; it originally carried its jealousy farther, and required that the jury itself should come from the vicinage where the crime was alleged to have been committed. The constitution of the state ordains that the accused shall be entitled to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." The design of this constitutional provision seems to be to secure to the accused a trial by a jury from the vicinage where the crime is supposed to have been committed, so that he may have the benefit of his own good character and standing with his neighbors, if these he has preserved, and also of such knowledge as the jury may possess of the witnesses who give evidence before them. The word "district," like the word "county," is here used in a restrictive sense, and is intended

*Crime—trial in county where committed.*

to designate the precise portion of territory or division of the state over which a court at any particular sitting may exercise power in criminal matters. (*Olive v. The State*, 11 Neb. 1.) There were no proceedings pending against Bunker in Ness county at the time of the organization of Lane county, on July 15, 1886. · After that date, Lane county was no part or portion of Ness county, as a township or otherwise. By the general provisions relating to counties, there must be a district court in each organized county. (*In re Wells*, 36 Kas. 341.) Bishop on Criminal Procedure says:

"Where a county is divided, a criminal act done before the division is to be prosecuted in the particular new county in which is the place of the offense. The offense is against the state; the trial in the new county." (Vol. 1, § 49.)

In Arkansas, it has been held that—

"If a new county is formed of territory formerly included in an old county, an indictment for an offense antecedently committed within the territory embraced in the new county may be maintained in the new, under the usual allegation setting out the offense as committed in the new." (*McElroy v. The State*, 13 Ark. 708.)

The same doctrine was declared in a New Jersey case, except that while it was held that the trial should be in the new county, it was also held that the indictment should not allege that the offense was committed in the new county, for the reason stated, that "it is seen that at the time mentioned there was no such place as that at which the offense is alleged to have been committed." (*The State v. Jones*, 3 Halst. 307.)

In Georgia, also, it has been held that the offender should be tried in the new county, and that the offense might be, or should be, charged as having been perpetrated in the old county. (*Jordan v. The State*, 22 Ga. 545–555.)

It is claimed, however, that the filing of the affidavit in the district court of Ness county was "an act constituting, or requisite to the consummation of the offense;" therefore that the jurisdiction of the offense would be in either Lane or Ness county, as having been committed partly in one and partly in

another county. (Crim. Code, §§ 20, 23.)   Affidavits in judicial proceedings, though touching matters incident or collateral, may be instruments of perjury. (Comp. Laws of 1885, ch. 31, § 148.)   Upon the trial of a party on an information for perjury, alleged to have been committed in swearing to an affidavit, it is proper to show that the affidavit was made to be used, or that it was actually used, in a judicial proceeding; and therefore if this case had been tried in a district court having jurisdiction thereof, it would have been competent and perhaps necessary to have shown that the affidavit was filed and used in the divorce case of Bunker *v.* Bunker, pending in Ness county; but this evidence would have been competent only for the purpose of showing that the facts sworn to were material.   To convict a party of perjury, it must be shown that there was an oath authorized by law, an issue or case to which facts were material, and a false statement regarding such facts upon such issue or in such cause. (*The People v. Fox*, 25 Mich. 492.)   Where the oath to an affidavit is required or authorized by the statute, this is made to appear when the purpose for which the affidavit was made is shown.   The materiality of an affidavit is sometimes directly averred in an information or indictment; it must, of course, in some way appear.

We think the offense was fully completed in the territory now embraced in Lane county, if perjury was committed by Bunker; and therefore the filing of the affidavit in Ness county did not confer upon the district court of that county jurisdiction of the accused.

The judgment of the district court will be reversed, and Bunker will be returned to the county jail of Lane county, by the warden of the penitentiary, for such further proceedings against him as may be proper.

All the Justices concurring.