## POPE *v.* THE STATE.

1. If a county is divided, and a portion of its territory enters into the formation of a new county, a criminal case pending in a court of the original county, which involves an offense committed, before the division, in the territory embraced within the limits of the new county can not be properly tried in the court of the original county, over a timely objection made by the accused raising the question of jurisdiction.
2. The constitution declares that criminal cases shall be tried in the county where the offense was committed; and one accused of crime can not be deprived of this constitutional right by the creation of a new county while the case is pending against him. Such a person has a right to demand a trial in the county which embraces the territory where the

offense was committed; and although the act creating the county and the general law of the State may be silent upon the subject of the transfer of criminal cases, under such circumstances the court in which the case is pending has the inherent power to order a transfer of the case to a proper court in the new county, and that court has like power to take jurisdiction of the case and carry the same to judgment.

Submitted January 15,—Decided February 15, 1906.

Accusation of assault and battery. Before Judge Henderson. City court of Vienna. December 5, 1905.

Pope was tried on December 5, 1905, in the city court of Vienna, upon an accusation charging him with assault and battery. The accused filed a plea to the jurisdiction, upon the ground that the alleged offense was committed on June 8, 1905, in the tenth district of Dooly county, that Crisp County was created on August 17, 1905, and organized on November 22, 1905, and that the tenth district of Dooly county thereafter became a part of Crisp county, and that therefore the city court of Vienna, which had jurisdiction only of offenses committed in Dooly county, had no jurisdiction over the alleged offense. The plea further alleged that the accused resided in Crisp county. He also entered a plea of not guilty. The allegations of the plea to the jurisdiction were admitted to be true by counsel for the State. The accused moved for a judgment of not guilty, and for a dismissal of the case. The motions were overruled; and the accused was convicted. To these rulings he excepted.

*Whipple & McKenzie,* for plaintiff in error.
*F. A. Hooper, solicitor-general,* and *E. F. Strozier,* contra.

COBB, P. J. (After stating the foregoing facts.) From 1777 until 1877 the General Assembly was authorized to lay out new counties whenever in its judgment it was necessary for the public welfare. The power to lay out new counties was expressly recognized in the earlier constitutions of the State, and was never taken away by any of the later constitutions until 1877. The last exercise of this power prior to the adoption of the present constitution was the creation of the county of Oconee in 1875, just two years before the convention assembled which declared that no new counties should thereafter be created. In 1904 the constitution was so amended as to authorize the creation of eight additional counties. The General Assembly in 1905, exercising the power granted to it,

created the number of counties authorized by the amendment. As the power of the General Assembly to create new counties existed for one hundred years, it would seem that there would be many cases involving questions arising out of the creation of new counties, but there are few in number. Less than ten have been called to our attention, and these seem to be all that are contained in the reports of this court. The first case arising out of the creation of the eight new counties above referred to is now before us for consideration, and involves the question as to the venue of a criminal case pending at the time that the new county was created, when the offense was committed in the territory embraced in the limits of the new county.

The provisions of the constitution fixing the venue in all cases both civil and criminal was intended to be exhaustive. It is therein declared that divorce cases shall be *brought* in the county where the defendant resides, if a resident of this State; if the defendant be not a resident of this State, then in the county where the plaintiff resides; that suits against the maker and indorser of a promissory note, or drawer, acceptor, or indorser of a foreign or inland bill of exchange, or like instrument, residing in different counties, shall be *brought* in the county where the maker or acceptor resides. Civil Code, §§ 5869-5873. It is to be noted that in the provisions just referred to the constitution fixes the venue by the use of the words, "shall be *brought*." The constitution declares that cases respecting titles to land shall be *tried* in the county where the land lies. Equity cases shall be *tried* in the county where the defendant resides against whom substantial relief is prayed. Suits against joint obligors, etc., may be *tried* in either county, and all other civil suits shall be *tried* in the county where the defendant resides, and all criminal cases shall be *tried* in the county where the crime was committed, except where the judge is satisfied an impartial jury can not be obtained. Civil Code, §§ 5870, 5871, 5872, 5874.

The county of Crisp was created by an act approved August 17, 1905. It provided that the first election for county officers should be held on the first Wednesday in October, 1905. There is nothing in the act relating to cases pending in the courts of Dooly county, from which the new county was carved. Acts 1905, p. 52. On August 21, 1905, an act was approved providing for the organization of new counties. Acts 1905, p. 46. The only provision in

that act relating to pending cases is the first section of the act, which is in the following language: "When a new county is organized, the jurisdiction of all suits pending in the county or counties from which said new county has been laid off, of which, under the constitution and laws of this State, the new county shall have cognizance, is transferred immediately to the corresponding courts in said new county, and the jurisdiction of suits then pending in the county or city courts of the old counties is conferred upon the superior court of said new county, together with all the court papers pertaining thereto, to which shall be attached the certificate of the clerk of the court from whose office they came that they are the proper papers of the suit, and the amount of cost accrued therein, and the amount then due; and on the final disposition of said transferred cases, it is hereby made the duty of the clerk of the court, or, in case of no clerk, of the presiding justice, to collect the costs due the officers of court in the county from which said case was transferred, and to account to such officer for all costs collected by them; and in event of their failure to account for such costs to the officers of the court from which said cases were transferred, they are hereby made liable to attachment for contempt." A provision somewhat similar to this is found in the Code of 1863, §31, and in subsequent codes, but was omitted from the Code of 1895 for the obvious reason that at the time that code was adopted there was no power in the General Assembly to create new counties.

The term "suit" can not, without serious strain, be construed to include a criminal case. The act is therefore silent in regard to the status of criminal cases involving offenses committed in the territory of the new county, which were pending in the old county at the time the new county was created. While the act provides for the transfer of civil cases, an investigation of the authorities as to the effect of the creation of a new county upon such cases may throw some light upon the status of a pending criminal case. When an act providing for the creation of a new county provides for the future election of county officers, the territory embraced within the limits of the new county does not become a county until the organization of the new county is perfected. As was said by Sanderson, J., in People *v.* McGuire, 32 Cal. 143, "In constituting a county something more is required than defining its boundaries. A local government must be provided, and the creation of a county is not

accomplished until both these things have been done in the appointed mode. To hold otherwise would lead to very absurd consequences." And see 7 Am. & Eng. Ency. Law (2d ed.) 923. In *Perkins* v. *Patten,* 10 *Ga.* 241, a suit was commenced against two defendants residing at the time in Marion county, and before trial and judgment the new county of Macon was created, embracing that portion of the territory of Marion in which the defendants resided. There was no provision in the act for the transfer of suits pending from the old to the new county. It was held that by operation of law, under the provisions of the constitution the new county was the proper county for the trial of the case, that being the county in which the defendants resided, and that the judgment rendered in the new county was a good and valid judgment. In that case Judge Warner said: "By the new organization of the counties, the defendant resided in Macon county, without any change of his location. By operation of law he becomes a citizen of the county of Macon, and is bound, with his neighbors, to perform all his civil duties in that county. His neighbors perform jury duty in the courts of the new county, and not in the old; so that if his legal rights are to be determined by a jury from the *vicinage,* the trial must be had in the *new* county. But, in our judgment, the constitution settles the question, that the *trial* of the cause was properly had in the new county of Macon, for the reason that was the county *wherein he resided.* If the constitution did not give the right to have the cause tried there, an enactment of the legislature transferring the cause from the old to the new county could not confer it. The jurisdiction for the trial of the cause is fixed by the constitution to be in the county *wherein the defendant resides.* The suit was properly commenced in Marion county, as the defendant resided there at that time, but the new county of Macon being organized, in which the defendants resided, the suit was necessarily transferred, by *operation of law,* from the county of Marion to the new county of Macon *for trial,* in accordance with the provisions of the constitution."

In *Murdock* v. *Little,* 18 *Ga.* 719, a recovery in ejectment was had in Crawford county, and at a subsequent term a motion was made to set aside the judgment and execution issued thereon, because no process was annexed to the declaration. Pending this motion the land in dispute was cut off into Taylor county; and it

was held not error for all the record in the case to be transferred to Taylor county. Judge Lumpkin, in the concluding sentence of the opinion, says: "At any rate, as the proceeding is yet incomplete, it would seem to be more symmetrical, and more in conformity to the spirit of our constitution, that further litigation springing out of the ejectment should be conducted in the county where the land lies." In *McBain* v. *Wimbish*, 27 *Ga.* 259, a will was propounded for probate in Sumter county, in which the testator had resided at the time of his death. A caveat was entered and an appeal taken by consent to the superior court. At this stage of the case a division of the county took place, and the record in this case, with that of others, was transferred to Schley county. When the case came on for trial in Schley county a motion was made that the case be returned to the superior court of Sumter county, and the court declined to grant this motion. It was held by this court that the motion was properly overruled. There was nothing in the act creating the new county which controlled the matter, nor was there any general law on the subject; but it was nevertheless held that the case was properly transferred to the new county. In *Knight* v. *Knight,* 27 *Ga.* 633, the testator died in Henry county. His will was probated and admitted to record in that county. An application was then made to revoke the letters testamentary on account of the birth of a posthumous child unprovided for. In the meantime that part of Henry county including the testator's residence at the time of his death was cut off into Spalding. It was held that Henry county had jurisdiction of the proceeding, and that the right to transfer to Spalding county was a personal privilege. It was said by Judge Lumpkin, "This right to transfer is a question of privilege, rather than of constitutional law. And may be waived by the party. And all done, up to that time, will be adjudged to be recte acta." And Judge Benning, in a concurring opinion, said, that while it was doubtful if the act of the legislature, "cutting off the part of Henry and making it a part of Spalding, did per se deprive the court in Henry of jurisdiction," the effect of the act was at least "to give to any of the parties interested in the estate the *privilege* to have the case transferred to Spalding." Judge McDonald dissented, but filed no dissenting opinion. In *McDougald* v. *Maitland, 30 Ga.* 703, it was held that where a case is to be transferred from an old to a new county, and the papers are

lost, copies should be established in the old county before the transfer of the case is ordered. In *Kelly* v. *Tate*, 43 *Ga.* 535, an action of ejectment was brought in Sumter county, and, while the case was pending, a change in the county line was made by which the land in controversy was made a part of Macon county. It was held that the act changing the county line deprived the superior court of Sumter county of jurisdiction of the case, and that the process of that court should not have been enforced, and a judgment refusing to grant an injunction restraining its enforcement was reversed. Mr. Chief Justice Lochrane, in the opinion, said: "For after the act of the legislature changed the territorial limits of the county, and the land, the subject of the suit, fell within a different county, the court was deprived of all jurisdiction over the subject-matter of the litigation, and, upon these facts being shown, ought to have granted the injunction sought." The case of *Brown* v. *Bleckley*, 26 *Ga.* 328, did not involve the question of venue at all, but simply the lien of the officers of the old county upon fines and forfeitures realized in the new county upon cases transferred from the old county. In *Smith* v. *Dees*, 92 *Ga.* 549, the question of venue was not involved, but whether the right of the county to tax was lost by an erroneous acquiescence of nearly forty years in which the land was not embraced within the limits of the county. The foregoing embrace all of the cases that we have been able to find in the reports of this court, relating to the venue of civil cases pending at the time of the creation of a new county, or the change of a county line.

We will now call attention to some of the rulings made by the courts of other States. In Security Co. *v.* Kauffman, 108 Cal. 214 (41 Pac. 467), it was held that a suit to foreclose a lien on land was triable in the old county, notwithstanding the fact that the land upon which the lien was claimed was embraced within the limits of a new county since the suit was begun. Particular emphasis was laid upon the fact that the constitution of that State required only that such cases should be "commenced" within the county in which the land was situated, and did not require that the action should be *tried* in that county. In Spalding *v.* Kelly, 66 Mich. 693 (33 N. W. 803), it was held that the legislature had authority to provide that a pending ejectment suit should be tried in the old county, and not in the new county which embraced the

premises in controversy. It does not appear that there was any constitutional provision requiring suits involving titles to land to be tried in the county where the land was situated. In McNew *v.* Williams (Ky.), 36 S. W. 687, it was held that the fact that a new county was formed and courts established therein did not authorize the courts of the county where the action was pending to transfer it to the new county because the parties resided or the subject-matter was located in the new county. It does not appear that there was any constitutional provision requiring the trial of actions in the county where the party resided or the subject-matter was located. In Buchwalder *v.* Conrad, 15 Montana, 464, 39 Pac. 573, an action concerning land was commenced in a county in which the land was then situated, and before the appearance of defendant a new county was formed out of that part which embraced the land in controversy. The constitution simply declared that actions concerning land should be *commenced* in the county in which the land was situated, but there was a statute which provided that such actions should be *tried* in the county where the land was situated. It was held that the defendant was entitled to have the case transferred to the proper court of the new county, if he applied for such transfer at the time of his appearance. In Cornell University *v.* R. Co., 49 Wis. 158 (5 N. W. 32), it was held that when ejectment was brought in a named county for lands then situated therein, the subsequent inclusion of the land in another county by an act of the legislature did not divest the jurisdiction of the court of the first county, in the absence of a provision in the act to that effect. It does not appear that there was any provision in the constitution of Wisconsin regulating the trial of actions. There is a ruling to the same effect in Blake *v.* Freeman, 13 Me. 130. See also Miller *v.* Kent, 60 Ind. 226; Tolman *v.* Smith, 85 Cal. 280 (24 Pac. 743) ; and see, in this connection, 48 Cent. Dig. tit. Venue, §§11, 69. It may be deduced from these decisions, that where there is no constitutional provision regulating the place at which the trial of a civil action shall be had, the cutting off into a new county of land involved in pending suits in the old county, or the change of residence of defendants against whom suits are pending, will not oust the jurisdiction of the courts of the old county, and, in the absence of a provision for the transfer of such cases to the new county, that they are triable in the courts of the

old county; but where there is a constitutional provision that cases respecting land shall be *tried* in the county where the land is situated, and that cases against defendants shall be *tried* in the county where the defendant resides, the defendants in the latter character of cases, or either party in the former class of cases, may have such cases transferred for trial to the proper courts of the new county. However, if a timely motion for a transfer is not made and the case is actually tried without objection, as between the parties it would seem that an estoppel would arise to prevent them from questioning the jurisdiction of the court after judgment. See Tolman *v.* Smith, supra. In a preceding part of this opinion we have called attention to the fact that the constitution of this State simply requires that certain actions shall be *brought* in a given county, and that certain other actions shall be *tried* in a given county. The act of 1905 providing for the organization of new counties simply provides for the transfer of pending suits of which, under the constitution and laws of this State, the new county shall have cognizance. It may be that a proper construction of this act would have the effect to transfer only those cases which the constitution declares should be *tried* in the county where the defendant resides, or where the land is situated, etc., and would not have the effect to transfer those cases where the constitution simply declares that the cases shall be *brought* in the county where the defendant resides. As has been seen, the constitution declares that criminal cases shall be *tried* in the county where the offense was committed. The effect of the creation of a new county upon the venue of a criminal case has been the subject of only one adjudication in this State. In *Jordan* v. *State*, 22 *Ga.* 546 (2), it was held, when a new county was formed from an old one, and an offense had been committed in the old county prior to the division in territory subsequently embraced in the new county, that the accused could be indicted in the new county, and that an indictment by the grand jury of the new county was good, when it charged that the offense was committed in that portion of the old county which was taken to form the new county. In the opinion Judge McDonald said: "The constitution fixed the place of trial, for the benefit of the defendant or parties accused, in the county where the offense was committed, as the locality at which he could most conveniently secure the attendance of witnesses. The change in the

name of a county can not operate to his detriment in any way, nor can the change of a county line." In State *v.* Donaldson, 3 Heiskell (Tenn.), 48, it was held that if a county is divided and a portion of its territory goes into the formation of a new county, a criminal act done before its division in the ceded territory can be prosecuted only in the new county, and the indictment may, as to the place, aver the offense to be committed in the new county. See also, State *v.* Jones, 9 N. J. L. 443 (17 Am. Dec. 483) ; State *v.* Bunker, 38 Kan. 737; McElroy *v.* State, 13 Ark. 708; State *v.* Jackson, 39 Me. 291; Murrah *v.* State, 51 Miss. 675; People *v.* Stokes, 103 Cal. 193 (12 Am. St. Rep. 102) ; State.*v.* Fish, 4 Iredell (N. C.), 219; State *v.* Hart, Id. 222; 7 Am. & Eng. Enc. Law (2d ed.), 924; 12 Cyc. 241; 14 Cent. Dig., tit. Criminal Law, §231.

The constitution of the State, in fixing the venue of criminal cases, recognizes the political division of the State into counties, and fixes the place of trial as that particular subdivision in which the crime was committed. The accused is entitled not only to a jury of the vicinage, but he is also entitled to the convenience resulting from a trial where the witnesses are more than apt to reside. The county where the crime is committed is, in the meaning of the constitution, that political subdivision of the State, styled county, which embraces the place where the crime was committed. The General Assembly can no more deprive the defendant of this right by the creation of a new county than it can by the change of a county line. The fact that the case is pending against him at the time that the new county is created does not deprive him of the right to demand that he be tried in the county in which the crime was committed, although the county, as such, was not in existence at the time the offense was perpetrated. What the constitution guarantees is a *trial* in the county where the offense was committed, not the beginning of a prosecution in that county. We will not at this time go to the extent of holding that the creation of the new county absolutely deprives the courts of the old county of jurisdiction of criminal cases pending therein, where the offense was committed in the territory embraced in the new county; for it may be that if the accused went to trial in the old county without objection, or if he made an express waiver of his right to insist upon a transfer to the new county, a judgment in the old county would be conclusive both upon him and the State. Upon this question we now

express no opinion. What we hold is that the accused, if he sees fit to insist upon it, is entitled to be tried in the new county, and when he raises an objection to the jurisdiction of the courts of the old county by a timely plea, or in any other proper way, he is entitled to have the case transferred to the new county for trial. At the time that the accused was arraigned in the city court of Vienna the organization of the county of Crisp had been completed. The county officers had been elected and were discharging the duties of their office, and the courts of that county were open and discharging the functions that the law imposed upon them. In other words, Crisp county had become one of the organized counties of this State, and its courts had jurisdiction of all offenses committed in the territory embraced within its limits, whether the offense was committed before the county was organized, or after that date. The defendant, under the constitution, was entitled to be tried in a court of competent jurisdiction in that county. Upon the filing of the plea, the facts therein averred having been admitted to be true by the solicitor, the trial of the case should have been suspended and an order passed transmitting all of the papers in the case to the superior court of Crisp county for trial, there being no city court in that county. Whether the case should be tried in the superior court of Crisp county, or transferred to the county court, is a question to be decided when the case reaches the superior court of Crisp county. *Judgment reversed. All the Justices concur.*