### MILTON v. MITCHELL, and *vice versa.*

1. Where an information in the nature of a quo warranto is brought by an individual to establish his right to an office as against an alleged usurper, it is not essential, in order to obtain leave to file the information, that a rule nisi shall be first granted calling upon the respondent to show cause why the information should not be filed against him.

(a) Where in such a case there is a petition praying leave to file an "accompanying information in the nature of a quo warranto," calling

upon the respondent named therein to show cause why he should not be ousted from office for the reasons stated in the petition and the "accompanying information," and the facts set forth in the information are positively verified, the judge may, without issuing a rule nisi, grant leave to file the information, and at the same time pass an order calling upon the respondent to show cause at a given time why he should not be ousted from the office claimed by the relator.

2. As the petition and accompanying information constituted one proceeding, it was not subject to special demurrer on any of the following grounds, viz.: it did not show upon what facts the relator claimed the office; nor did it allege that the respondent was exercising the duties of the office; nor did it set forth when the term of office claimed by the relator began or ended.

3. The general demurrers to the petition and accompanying information were properly overruled.

4. Under the agreed statement of facts, which is set forth in the opinion, the judge did not err in holding that the relator was entitled to the office, and in ousting the respondent.

MARCH 13, 1913.

Quo warranto. Before Judge Parker.. Pierce superior court. September 21, 1912.

*John S. Walker* and *Andrew B. Estes,* for Milton.

*Wilson, Bennett & Lambdin,* contra.

FISH, C. J. This was an information in the nature of quo warranto brought by Robert G. Mitchell Jr., claiming the office of judge of the city court of Blackshear, against Walter A. Milton, to inquire into the right of the latter to such office. Mitchell's petition set forth that he claimed to be the duly appointed, qualified, and commissioned judge of that court, "and as such applies for leave to file in behalf of himself the accompanying information in the nature of a quo warranto, in order that he may inquire into the right of respondent W. A. Milton, therein named, to hold the office of judge and exercise the duties thereof of judge of the city court of Blackshear." The petition further stated that Mitchell challenged the right of Milton to such office, on the ground that he was not entitled thereto, "notwithstanding the fact that he is trying to exercise the duties of said office, to which he claims the right and title." The prayers of the petition were, that leave be granted to file the information, and that "the writ of quo warranto issue, calling upon respondent, the said W. A. Milton, to show cause why he should not be ousted from office on account of the fact that he has no legal right to same." Accompanying the petition was an information in which Mitchell sought

to set forth the facts upon which he based his claim to the office of judge of the city court of Blackshear, alleging that Milton was discharging the duties of that office without legal authority, and setting out certain facts which it was claimed showed that Milton had no right or title to the office. The prayer of' the information was "for process calling upon said respondent to show cause why he should not be ousted from said office; and relator prays that process may issue, directed to said respondent, requiring him to answer relator's complaint according to the statute in such cases made and provided." There was no affidavit immediately following the petition, verifying the allegations thereof. There was, however, an affidavit attached to the information which accompanied the petition, positively verifying all the allegations of fact stated therein. The judge 'of the superior court, to whom the petition and the "accompanying information" were presented, upon considering the same, passed an order granting leave for the filing of the information, and calling upon Milton to show cause before the judge at a given date "why the prayer of relator should not be granted." The order further directed that Milton be served, at least five days before the date fixed for the hearing, with copies of the application, the information, and the order. Milton, more than five days before the time for the hearing, acknowledged service and waived further notice and service.

At the hearing, by demurrer and plea in abatement, Milton made the point that the information was prematurely filed, because no rule nisi based upon a verified petition had been granted, calling upon him to show cause why leave to file an information should not be ordered, and therefore that he had been deprived of an opportunity to show· cause why leave to file an information should not be given.

1. In this State there is no statute specifically prescribing the procedure in a quo warranto proceeding, or an information in the nature thereof. ˙ The original writ of quo warranto was strictly a civil remedy (17 Enc. Pl. & Pr. 390), and an information in the nature of quo warranto has long since lost its character as a criminal proceeding. Ib. 391; 32 Cyc. 1414; High, Ex. Rem. (3d ed.) 739. Where an information is filed by an individual to try his right to an office as against an alleged usurper, it is considered a purely civil remedy, to be governed by the rules of pleading that

are applicable in other civil actions. 17 Enc. Pl. & Pr. 464; Jones v. State, 112 Ind. 193 (13 N. E. 416). Our Civil Code, § 5451, provides that "The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein." As was said in *Pope* v. *State,* 124 *Ga.* 801, 804 (53 S. E. 384, 110 Am. St. R. 197, 4 Ann. Cas. 551) : "The term 'suit' can not, without serious strain, be construed to include a criminal case." "All suits in the superior courts for legal or equitable relief, or both, shall be by petition to the court, signed by the plaintiff or his counsel, plainly, fully, and distinctly setting forth his charge, ground of complaint and demand, and the names of the persons against whom process is prayed." Civil Code, § 5538. "If an extraordinary process or remedy is prayed, the sanction of the judge of the court, or of some judge of the superior courts of this State, must be first obtained before such process is issued or such remedy granted. The application may be ex parte, and granted without a hearing in cases of manifest necessity. In all other cases the judge should be careful to allow a hearing before passing the order." Civil Code, § 5545. The petition in the present case, with the "accompanying information," should properly be construed as one proceeding; and as the facts set forth in the information were positively verified by the affidavit of Mitchell attached thereto, we are of the opinion that there was a sufficient verification of the allegations of fact contained in the proceeding as a whole, consisting of the petition and the information.

The judge, in our opinion, upon presentation to him of the petition and "accompanying information" properly verified, was authorized, without a rule nisi, to grant leave for the filing of the information, and at the same time to pass an order calling upon the respondent to show cause on a subsequent date why, for the reasons stated in the proceedings brought against him, he should not be ousted from the office the duties of which he was then discharging. At this time of practical unanimity in the effort, on the part of all interested in the administration of the law, to simplify judicial proceedings, to break away from mere technicalities, and to avoid vexatious and expensive delays, we are unwilling to hold, in a case of information in the nature of quo warranto

brought by an individual to establish his right to an office as against an alleged usurper, that it is necessary to first present to the judge a petition fully setting forth all the facts upon which the relator claims to be entitled to the office, as well as all the facts which he contends show that the one proceeded against, and who is discharging the duties of the office, is not legally entitled to hold it, and that the judge, upon consideration of such petition, shall grant a rule nisi calling upon the respondent to show cause why leave to file an information should not be granted, and that upon a hearing upon the rule nisi, at which the whole case from the standpoint of both parties is considered, the judge, in the event he should then be of the opinion that the information should be filed, shall grant leave that it be done, and then at a future hearing of the information, wherein all the allegations of the petition are repeated and upon the response or answer thereto, he shall render judgment in the case—there being no issue of fact— which judgment, presumably, would accord with the opinion originally entertained by him when granting leave to file the information. We see no good reason for requiring two such trials. That a preliminary rule to show cause why leave to file an information is not indispensable to the granting of leave to file the information in the nature of a quo warranto, when an individual is the relator, see Com. v. Cluley, 56 Pa. St. 270 (94 Am. D. 75); Gilroy v. Com., 105 Pa. St. 487; Com. v. Kistler, 149 Pa. St. 350 (24 Atl. 216); People v. McFall, 124 Ill. 645 (17 N. E. 63); City of East Dallas v. State, 73 Tex. 373 (11 S. W. 1030); Capital City Water Company v. State, 105 Ala. 406 (18 So. 62, 29 L. R. A. 743); State v. Thompson, 34 Ohio St. 365. It is true that in *Harris* v. *Pounds, 66 Ga.* 123, it was stated that "Where not regulated by statutes or local laws, the usual practice in quo warranto cases is to present to the court a petition, verified by affidavit, for leave to file the information; whereupon a rule nisi to show cause to the contrary is issued, and upon the return thereof, unless the respondent shows such cause as puts his right beyond dispute, the rule to file information would be made absolute, that the question concerning the right may be determined." The authority cited for the practice stated was High on Ex. Rem. § 530, which in the 3d edition of that work is § 731. The following language now appears in the same section: "The practice, how-

ever, of proceeding in the first instance by a rule to show cause
is by no means uniform; and when the proceedings are instituted
for the usurpation of an office claimed by the relator as a matter
of right, it has been held to be immaterial whether he proceeds
in the first instance 'by the rule nisi or asks leave to file the in-
formation."

It appears from an examination of the case of *Harris* v. *Pounds,*
66 *Ga.* 123, that the question of practice which we are now con-
sidering was not involved. There a petition was presented to
the judge, praying that a rule nisi be issued, calling upon the re-
spondents to show cause why leave to file an information against
them should not be granted; and it was held that such petition
should be verified by positive affidavit as to the facts upon which
the petitioners based their title, but the facts concerning usurpation
might be verified on information and belief. This rule was fol-
lowed in *McWilliams* v. *Jacobs,* 128 *Ga.* 375 (57 S. E. 509);
wherein, as the record of file in this court shows, there was no
petition for a rule nisi calling upon the respondent to show cause
why leave should not be granted to file an information. In the
opinion it was said: "We know of no provision of law which
requires notice to be given the alleged usurper of an office of an
application for leave to file such information." The proceedings
there were similar to those in the case at bar. In that case there
was a petition accompanied by an information, and the affidavit
followed the information; and it was in effect held that the verifi-
cation of the petition fully complied with the rule stated in *Harris*
v. *Pounds,* supra. It follows from what has been said, that the
judge properly overruled the demurrer as to the point above dis-
cussed, as well as the plea in abatement raising the same question.

2. The petition alleged that Mitchell claimed to be the duly
appointed, qualified, and commissioned judge of the city court of
Blackshear, and that Milton was not the judge of that court, not-
withstanding he was then trying to exercise the duties of that office,
to which he claimed the right and title. The information ac-
companying the petition, and which we consider a part thereof,
alleged, that Mitchell, on August 13, 1912, was appointed by the
Governor to be judge of such city court, and that on the same date
his appointment was duly confirmed by the Senate; that he was
duly commissioned by the Governor as judge of such court; that he

had qualified by taking the oath of office; that Milton was assuming to hold the office of judge of such court and was undertaking to exercise the duties thereof without legal warrant or authority, for the reason that he claimed to hold the office under an ad interim appointment of former Governor Hoke Smith, and the commission issued in pursuance of such appointment, when both the appointment and commission were made subject to confirmation by the Senate of 1912; and that that "session of the Senate adjourned sine die on August 14, 1912, and thereby went out of existence without having confirmed such ad interim appointment."

The petition and information, considered as one proceeding, was not subject to special demurrer on any of the following grounds: (*a*) it did not appear upon what facts Mitchell claimed the office; (*b*) it was not alleged that Milton was holding the office of judge of the city court of Blackshear or was exercising the duties thereof; (*c*) or because it was not alleged when Mitchell's term of office as judge began or ended. We will deal specifically only with the last-stated ground, as we think the other grounds are so obviously without merit as not to require further consideration.

On September 5, 1912, the proceedings were brought by Mitchell claiming the office of judge of the city court of Blackshear, to inquire into the right of Milton to hold such office, the duties of which, it is alleged, he was then discharging. The question for determination, presented by the allegations made by Mitchell, was, who, at the time of the institution of his proceedings, had the legal right, he or Milton, to the office of judge of the city court of Blackshear? The respective claims of both of them were set forth; and if the allegations in relation thereto should be true, then the question as to who, at the time of the commencement of the proceedings, was entitled to the office could be readily determined without inquiring as to when the term of Mitchell began, as it sufficiently appeared by his allegations that it began prior to the filing of the information. And even if it were material, under the facts alleged, to inquire when his term would end, if it should be decided that he was entitled to the office, the judge trying the case would take judicial cognizance of the act of the General Assembly establishing the city court of Blackshear, and fixing the term of the office of judge of the court, which act will be considered in the last division of this opinion.

3. The petition, considered in connection with the information accompanying it, which, as already indicated, we think should be taken as a part thereof, sufficiently, as against a general demurrer, set forth the grounds upon which Mitchell claimed the office, and those upon which he contended that Milton was not legally entitled to it.

4. The judge, by consent, without a jury tried the case upon an agreed statement of facts substantially as follows: On August 15, 1911, the date of the approval of the act creating the city court of Blackshear, Governor Smith sent to the Senate, then in session, the nomination of Walter A. Milton to be judge of that court for a term of four years from the approval of the act. The Senate failed to act upon this nomination, and the same was returned to Governor Smith by direction of that body. That session of the Senate was finally adjourned without further action by it on the nomination. Subsequently, on August 19, 1911, Governor Smith again appointed Milton judge of such city court for a term of four years from the date the act was approved, the order of appointment reciting that the Senate had failed to act upon the previous nomination of Milton, and further stating that the appointment was "subject to confirmation by the Senate at the next session of the General Assembly." On August 28, 1911, Milton was commissioned by Governor Smith for the term of four years from August 15, 1911, the commission also stating that it was "subject to confirmation by the Senate at the next session of the General Assembly," and that "this commission to continue in force for and during the term of four years from the 15th day of August, 1911, or until you are removed in the manner prescribed by law." After receiving this commission, Milton, on August 30, 1911, took the oath of office and entered upon the discharge of the duties of judge of such city court, and has performed the same from that time. The Senate, at the session of the General Assembly for 1912, did not act upon either of the nominations of Milton made by Governor Smith, nor did he send to that body a transcript of the record showing such appointments and nominations, nor did either Governor Smith or Governor Brown withdraw said appointment as originally made by Governor Smith, "nor did the Senate call upon the Governor for such appointment, either the original or the transcript of the record." Certain rules of the Senate of 1911-

1912 were set forth in the agreed statement of facts, but we do not consider them material in the view we take of the case. On August 13, 1912, Governor Brown nominated Mitchell to the office of judge of the city court of Blackshear, for the term of four years from August 15, 1911. On the same date the Senate then in session confirmed this nomination, and on the same date the secretary of the Senate reported such confirmation to the Governor. Subsequently Mitchell took the prescribed oath of office as judge of such city court, and was then commissioned by Governor Brown as judge of such court for the term of four years from the date the act was approved, and until his successor should be appointed and qualified, unless his commission should "be sooner annulled in the manner authorized by the constitution and laws of this State."

The judge of the superior court, after hearing the case upon the information and the answer and the agreed statement of facts, adjudged Mitchell to be the lawfully appointed, commissioned, and qualified judge of the city court of Blackshear, and entitled to use, hold, and exercise such office, and perform its duties and functions and to receive the emoluments thereof, and that Milton was not entitled to hold such office or perform its duties or enjoy its emoluments, and ordered that Milton be excluded and ousted from the office.

As to the filling of a vacancy in the office of judge of the city court of Blackshear the act of 1911 (Acts 1911, p. 210), creating the city court of Blackshear, may be construed in two ways. By one construction it appears as a harmonious whole; by the other, the two parts of the act are in conflict with each other. It provides for a term of four years from the date of the approval of the act, to be filled by appointment of the Governor and approval of the Senate. After the expiration of such four-year term, a provision was made for the judge to be elected by the people. Then occurs the expression, "Should there be a vacancy in said office of judge from any cause whatsoever, the said vacancy shall be filled in the same manner as vacancies in the office of judge of the superior court are now filled." It is contended that under this provision, as soon as the Senate adjourned in 1911 without confirming or acting upon the nomination of Milton, a vacancy existed in the office, and that the Governor should fill such vacancy as a vacancy in the office of judge of the superior court would be filled, that is,

to hold until the first of January following the next general election. To put such a construction upon the clause above quoted would be to make different provisions of the act antagonistic and self-destructive. Under the act no election for judge was to take place for four years. In the meantime there would be a general election for judges of the superior court. Suppose it should be held that the appointment after the adjournment of the General Assembly continued until the January following the next general State election, then who would hold the office from that time until the end of the four years? Would the appointee hold over beyond that time until his successor was duly inducted into office, and, if so, inducted into office how? By another appointment, or by appointment followed by confirmation of the Senate, or by election under the act? If it be contended that such an appointment would hold until January 1, following the first election of a judge under the terms of the act, then the whole purpose to fill the first term by appointment and confirmation would be upset. On the other hand, if it be held that the purpose of the General Assembly was to make provision by means of appointment and confirmation to fill the office during the first term of four years, that thereafter it should become an elective office analagous to that of judge of the superior court, and, correspondingly, that when it so became, vacancies should be filled in the same manner as a vacancy in the office of judge of the superior court, then the whole act is given harmonious meaning, and is not made to be self-conflicting. We hold that this is the true construction.

In the agreed statement of facts it was stated that the name of Milton was sent by the Governor to the Senate during its session in 1911 for confirmation, and that they did not act upon it, but returned it to the Governor for some reason not stated in the record. After they adjourned, the Governor appointed Milton to the office. By the terms of his order of appointment and the commission issued thereunder, Milton was appointed subject to confirmation by the Senate at its next session. Such session was held in 1912. While in the meantime Governor Smith had been succeeded by Governor Brown, yet the office of Governor was not vacant, but was continued; and the appointing power is not conferred upon any particular individual who for the given time may be Governor, but is conferred upon the Governor, who may be in office at the time when

official action is taken. Where under the law an appointment is made by the Governor, subject to confirmation by the Senate, such an appointment is not complete until the Senate confirms it, and an appointment made during a recess is not an appointment for the full official term unless confirmed by the Senate. 29 Cyc. 1372; 23 A. & E. Enc. Law, 346 (4) ; Mechem on Public Officers, § 134. During the session of the Senate in 1912 the question of perfecting the appointment of judge of the city court of Blackshear, to hold during the remainder of the first term of four years, was ripe for action. According to the agreed statement of facts, the name of Milton was not sent to the Senate, but the Governor sent Mitchell's name to the Senate for confirmation for that term, and they confirmed his appointment. When the Governor who was in office during the session of the General Assembly of 1912, recognizing that Milton did not have a perfect title to the office for the full term of four years because the Senate had not confirmed his appointment, sent Mitchell's name to the Senate for confirmation, the substantial effect of this was to say to the Senate that he desired to withdraw the name of Milton before they had acted upon it, and to present the name of Mitchell for their confirmation; and when the Senate acquiesced in this and confirmed the name of Mitchell, knowing from their records what had previously happened as to the presentation to them of the name of Milton and its return to the Governor, in substance they agreed, so far as that branch of the appointing power was concerned, that the name of Milton should be withdrawn and Mitchell's substituted for it, and that upon such substitution they confirmed the appointment of Mitchell thus sent to them. Thus we have a joint action on the part of the Governor and the Senate, the former substantially declaring to the Senate that he desired to withdraw the name of Milton, the latter acquiescing in this, and the Governor substituting Mitchell's appointment and the Senate confirming it. So far as the two governmental authorities who should take part in filling the office for the full term, or the remainder thereof, were concerned; we thus have a concurrence of action in appointing Mitchell for the rest of such term. Even if Milton had any cause of complaint that his name was not formally presented for action, it does not appear that he took any steps to have his name placed before the Senate, either by request preferred to the Governor, or

by calling the attention of the Senate to his claim, that it might be passed upon; but he remained quiescent during the session of the General Assembly, and the appointment and confirmation, of Mitchell took place about the close of the legislative term,—as is known to the court, judicial cognizance being taken that the regular sessions of the legislature begin on the fourth Wednesday in June, and under the constitution the session is limited to fifty days (where no impeachment trial is pending),—and the agreed statement of facts shows that Mitchell was confirmed on August 13, 1912.

It follows from what has been said, that all the rulings and the judgment of the trial court complained of in the bill of exceptions sued out by the respondent, Milton, are affirmed. The judgment on the main bill of exceptions being affirmed, the cross-bill sued out by the relator, Mitchell, is dismissed.

*Judgment on the main bill of exceptions affirmed. Cross-bill dismissed. Beck, J., absent. The other Justices concur.*