No. 72,779

STATE OF KANSAS, *Appellant*, v. DIANA JURDAN, *Appellee.*
(908 P.2d 1309)

Opinion filed December 29, 1995.

*John L. Swarts III*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Reid T. Nelson,* assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is an appeal by the State from the dismissal of the charge of impairing a security interest in violation of K.S.A. 1994 Supp. 21-3734. The trial court dismissed for lack of venue based upon its conclusion that Bourbon County, Kansas, was not the "county where the crime was committed" under K.S.A. 22-2602 because the collateral subject to the security interest had been disposed of in the state of Missouri. For reasons set forth below, we reverse and remand for further proceedings.

The parties have submitted the following agreed-upon statement of facts for this case:

"The defendant purchased an automobile (a 1990 red Pontiac Firebird) from Ray Shepherd Motors, Inc. (hereafter, lien holder) in Ft. Scott, Bourbon County, Kansas, in February, 1993. A security agreement was executed and a lien placed on the title to the automobile, which was registered in Kansas, showing Ray Shepherd Motors, Inc. as lien holder.

"In March, 1993, the defendant locked herself out of the automobile and lien holder arranged to use a set of master keys to let her in it and informed her first (March, 1993) payment was late. Defendant assured lien holder payments would be sent lien holder during the first week of each month. Payments were due on or before the 24th day of each month.

"In May, 1993, the automobile was repossessed by the lien holder for the defendant's failure to maintain liability insurance, but was returned the same day to the defendant at the insurance agency by the lien holder upon defendant's purchasing and providing proof of insurance. At the time the automobile was returned, defendant informed the lien holder she was moving to Pittsburg, Crawford County, Kansas, and provided the address.

"After the defendant moved to Crawford County, payments were regularly made from May through September, 1993. However, the October payment became past due and on 12 November, 1993, she was placed on lien holder's delinquency list. The lien holder contacted the defendant about the delinquent payment on 20 November, 1993, and was told by defendant a money order was in the mail.

"When no money order was received, the lien holder contacted the defendant again on the morning of 27 November, 1993, and was told another check would be mailed.

"Lien holder again contacted defendant on 10 December, 1993, about not having received payment and was told by defendant that she would send another payment that day or the next.

"On 14 December, 1993, lien holder sent a notice to cure default by payment of arrearages.

"On 24 December, 1993, the lien holder contacted defendant again about repossessing the automobile for nonpayment and was told by defendant she had sold the automobile to a Missouri couple on 20 December, 1993 for $500.00 and they were to make remaining payments. Further, the couple would contact lien holder. Whereupon, lien holder told her she had no right to sell the automobile. Lien holder then contacted a repossession company and attempted to repossess the automobile, but the lien holder could not locate the couple, as the address given did not exist, or the automobile.

"In early January, 1994, lien holder contacted defendant seeking her assistance in locating the couple and vehicle by leaving messages on her telephone answering machine. On 12 January, 1994, lien holder, after having no calls returned went to defendant's address to speak to her, but only her daughter was home, so another message was left with her daughter for her.

"On 20 December, 1994, police in Fort Scott, Kansas, were contacted and a report was filed leading to the charge being filed. Lien holder's loss was $5782.18.

"Later, through investigation, the lien holder discovered the defendant sold the automobile to an automobile dealer in Joplin, Missouri, on the afternoon of 27 November, 1993, who subsequently sold it to a customer.

"Further, the lien holder learned that in August, 1993, after her move from Ft. Scott, Kansas, the defendant had reregistered the automobile in Walker, Missouri. Lien holder was unaware of the reregistration. Defendant had received a clear title issued on 13 September, 1993, to the automobile from Missouri. The State of Missouri sought the return of said title from defendant in February, 1994, as the same had been issued in error.

"The defendant was Summoned to Court, given a First Appearance and appointed counsel, given her Preliminary Examination and bound over, Arraigned, and the matter set for Jury Trial."

The defendant, Diana Jurdan, was charged in Bourbon County, Kansas, with impairing a security interest under the provisions of K.S.A. 1994 Supp. 21-3734(a)(2):

"(a) Impairing a security interest is:

. . . .

(2) selling, exchanging or otherwise disposing of any personal property subject to a security interest without the written consent of the secured party, with intent to defraud the secured party, where such sale, exchange or other disposition is not authorized by the secured party under the terms of the security agreement."

The trial court's rationale for dismissal involved the interpretation of K.S.A. 1994 Supp. 21-3734(a)(2):

"The State argues that Bourbon County has appropriate venue because the locus of the security agreement is in Bourbon County. Without reaching the merits of this argument, the Court holds that the location of the security interest is not significant under our statute. By the language of K.S.A. 21-3734(a)(2), the Court finds that the critical factor is the location of the secured collateral at the time it is impaired."

This is a case of first impression in Kansas. The resolution of this issue requires the interpretation and construction of K.S.A. 1994 Supp. 21-3734(a)(2), as it relates to venue under the provisions of K.S.A. 22-2602. Statutory interpretation is a question of law, and this court has unlimited review of questions of law. See *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993).

Black's Law Dictionary 1557 (6th ed. 1990) defines venue as:

"The particular county, or geographical area, in which a court with jurisdiction may hear and determine a case. Venue deals with locality of suit, that is, with question of which court, or courts, of those that possess adequate personal and subject matter jurisdiction may hear the specific suit in question."

The United States Constitution provides: "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Art. III, § 2.

" 'The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed . . . the provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.' " *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 245, 11 L. Ed. 2d 674, 84 S. Ct. 769 (1964).

Section 10 of the Kansas Constitution Bill of Rights provides:

"In all prosecutions the accused shall be allowed . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

Early in our history this court stated:

"The design of this constitutional provision seems to be to secure to the accused a trial by a jury from the vicinage where the crime is supposed to have been committed, so that he may have the benefit of his own good character and standing with his neighbors, if these he has preserved, and also of such knowledge as the jury may possess of the witnesses who give evidence before them." *State v. Bunker*, 38 Kan. 737, 741, 17 Pac. 651 (1888).

Consistent with our constitution, Kansas enacted K.S.A. 22-2602, which provides: "Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed." An exception is made where the crime occurs in more than one county as provided by K.S.A. 22-2603: "Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."

K.S.A. 21-3734 was enacted by the Kansas Legislature in 1969. Prior to 1969, K.S.A. 1965 Supp. 21-652 proscribed similar activity under the heading: "Unlawful acts concerning security interests; penalties." This statute proscribed the selling, injuring, or otherwise disposing of personal property subject to a security interest.

There was no mention of the resultant impairment of the secured interest. K.S.A. 1965 Supp. 21-652 also proscribed only the disposition of the collateral. Under this statute, venue would be proper only in the place in which the collateral was disposed. The same is also true of prior statutes governing this area such as G.S. 1949, 58-318, which was entitled: "Injuring destroying, concealing, unlawful sale or disposal; penalties" and G.S. 1915 § 6513, entitled "Injuring, destroying or concealing mortgaged property or selling or disposing of same without written consent of mortgagee."

Unlike its predecessors, K.S.A. 1994 Supp. 21-3734 is concerned not only with the fate of the collateral but also the resultant damage to the security interest. K.S.A. 21-3734 was passed as part of the general overhaul of the criminal code conducted in 1969. Unfortunately, there is no legislative history indicating why the current statute focuses on the impairment of the security interest.

The change in our present statute governing impairment of a security agreement was enacted after passage of the Kansas Uniform Commercial Code, K.S.A. 84-1-101 *et seq.* (L. 1965, ch. 564, § 1, January 1, 1966). The Kansas Uniform Commercial Code, and particularly Article 9 dealing with the type of transaction we examine in this case, reflects this state's recognition of the rights, duties, and responsibilities of those dealing in the modern world of commercial transaction. The Code's definition and use of the term "security interest," the same term used in the criminal charge we now consider, sheds light on the question posed by this appeal.

A security agreement under the Kansas Uniform Commercial Code means an "agreement which creates or provides for a security interest." K.S.A. 1994 Supp. 84-9-105(1)(l). There is no question that the defendant and Ray Shepherd Motors, Inc., entered into a "security agreement" with respect to the vehicle sold to the defendant. A security interest is defined as an "interest in personal property . . . which secures payment or performance of an obligation." K.S.A. 1994 Supp. 84-1-201(37). Under the stipulated facts of this case, Ray Shepherd Motors, Inc., had a "security interest" in the vehicle disposed of by the defendant.

In order for there to be an impairment under K.S.A. 21-3734, the interest of the creditor must exist. Under the Kansas Uniform

Commercial Code, certain requirements must be fulfilled for the creditor's security interest to "attach" and become "enforceable." As it relates to this case, K.S.A. 1994 Supp. 84-9-203(1) provides that "a security interest is not *enforceable* against the debtor or third parties with respect to the collateral and does not attach" unless (a) the debtor has signed a security agreement, (b) value has been given, and (c) the debtor has rights in the collateral. Again, there is no dispute that all three conditions were met and completed in Bourbon County, Kansas.

The defendant, after completing all the requisite acts to effect her ownership of the vehicle in Kansas, disposed of the vehicle subject to the security interest of Ray Shepherd Motors, Inc., in the state of Missouri. Her disposition of the vehicle resulted in the impairment of the security interest in that the attached security interest was no longer "enforceable against the debtor." K.S.A. 1994 Supp. 84-9-203(1). Thus, while the disposition of the vehicle, which was the collateral subject to the security interest, may have occurred out of state, the effect of that act was to impair the attached security interest held by the secured lienholder in Bourbon County, Kansas.

The trial court considered, in its order of dismissal, the territorial applicability of the Kansas Criminal Code to the transaction involved. K.S.A. 21-3104 provides:

"(1) A person is subject to prosecution and punishment under the law of this state if:

(a) He commits a crime wholly or partly within this state; or

(b) Being outside the state, he counsels, aids, abets, or conspires with another to commit a crime within this state; or

(c) Being outside the state, he commits an act which constitutes an attempt to commit a crime within this state.

"(2) An offense is committed partly within this state if either an act which is a constituent and material element of the offense, or the proximate result of such act, occurs within the state. If the body of a homicide victim is found within the state, the death is presumed to have occurred within the state.

"(3) A crime which is based on an omission to perform a duty imposed by the law of this state, is committed within the state, regardless of the location of the person omitting to perform such duty at the time of the omission.

"(4) It is not a defense that the defendant's conduct is also a crime under the laws of another state or of the United States or of another country.

"(5) This state includes the land and water and the air space above such land and water with respect to which the state has legislative jurisdiction."

After reviewing the above statute the court concluded:

"[T]he only part of that statute [K.S.A. 21-3104] which could apply is subsection (a). It is arguable that the crime was committed wholly or partly within this state. The State could argue, with some force, that when the interest of Ray Shepherd Motors was inadvertently left off the title of Defendant's vehicle and the vehicle was subsequently traded in the State of Missouri, Defendant formulated the intent to trade the vehicle without disclosing the interest of Ray Shepherd's while Defendant resided in Kansas. This theory would undoubtedly give the State of Kansas jurisdiction."

The court then discussed venue and concluded that under the crime charged, the disposition of the vehicle gave rise to the charge and because that disposition occurred in Missouri, venue did not lie in Kansas.

Unlike the trial court, we do not limit our consideration to K.S.A. 21-3104(1)(a), but look to the provisions of K.S.A. 21-3104(2). In this case, the proximate result of the disposition of the vehicle in Missouri was the impairment of the attached security interest of Ray Shepherd Motors, Inc., which was rendered unenforceable. By reason of the Missouri disposition, the lienholder was no longer able to realize its interest in the vehicle. While the lienholder may still initiate an action based on the debt, the lienholder is no longer able to enforce its security interest in the collateral against the debtor in Kansas.

The disposition of the vehicle in Missouri has independent legal significance in Kansas, rendering the interest of the lienholder no longer enforceable. The sale in Missouri is the proximate cause of the impairment of the lienholder's rights in Kansas under the security agreement. In accord with K.S.A. 21-3104(2), "the proximate result of such act occurs within the state," *viz.*, the impairment of the enforcement against the debtor with respect to the collateral occurred in Kansas. K.S.A. 1994 Supp. 84-9-203(1).

Having made the determination that Jurdan is subject to prosecution under Kansas law, we now address the question of whether venue is proper in Bourbon County. We begin by noting that the contacts the defendant had with Bourbon County, Kansas, are in-

deed significant. She executed a security agreement with Ray Shepherd Motors, Inc., in Bourbon County after making a decision to purchase a vehicle from the dealership. She received the vehicle, accepted possession, obtained title, and completed all the necessary requisites for ownership of the vehicle in Bourbon County.

In addition, we note that in defining the offense with which the defendant was charged, K.S.A. 1994 Supp. 21-3734 first states the crime as "impairing a security interest," which is then followed by language setting forth the acts which constitute impairment. The crime is the *impairment* of the security interest, and while under the facts of this case the act of disposing of the vehicle, an essential element of the offense, occurred in Missouri, the proximate result of the act was the *impairment* of the security interest in Bourbon County, Kansas. The Missouri disposition had independent legal significance in Bourbon County by rendering Ray Shepherd Motors, Inc.'s security interest unenforceable. The *impairment* of this interest is the crime proscribed in K.S.A. 1994 Supp. 21-3734. Whether venue may also exist in the county where the property is disposed of is not a question raised by this appeal. Consequently, we express no opinion on this question.

Finally, the result we reach in this case is consistent with our venue statute because the Missouri disposition had the proximate result of impairing the security interest in Kansas by rendering it unenforceable. Moreover, requiring the defendant to respond to this charge in Bourbon County under the facts of this case comports with " '[t]he provision for trial in the vicinity of the crime . . . a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.' " *Platt v. Minnesota Mining Co.*, 376 U.S. at 245.

We conclude that venue was proper in Bourbon County, Kansas, because the defendant's out-of-state act proximately caused impairment of the security interest in Bourbon County. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.