No. 121,094

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

IVAN ROZELL,
*Appellee*.

SYLLABUS BY THE COURT

1.

Whether proximate result jurisdiction exists to justify bringing criminal charges in Kansas hinges on whether the proximate result of a material element of a person's offense occurred in Kansas or whether the proximate result of a substantial and integral part of a person's overall continuing criminal plan occurred in Kansas. K.S.A. 2019 Supp. 21-5106(b).

2.

When determining proximate result jurisdiction, Kansas courts may consider the negative consequences of a person's out-of-state criminal acts within Kansas only if the statutory language of that person's charged crime considered such negative consequences.

3.

Neither the making false information statute, K.S.A. 2019 Supp. 21-5824(a), nor the fraudulent insurance act statute, K.S.A. 2019 Supp. 40-2,118(a), consider the negative consequences of a person's out-of-state criminal acts in the language of the statute.

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed August 7, 2020. Affirmed.

1

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellant.

No appearance by appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and POWELL, JJ.

ARNOLD-BURGER, C.J.:  The State of Kansas appeals the district court's dismissal of charges it brought against Ivan Rozell for making false information and committing a fraudulent insurance act. The district court dismissed the charges for lack of jurisdiction. On appeal, the State argues that Kansas has jurisdiction to prosecute Rozell under K.S.A. 2019 Supp. 21-5106(b)'s proximate result jurisdiction provision. It additionally argues that venue for its prosecution against Rozell was proper in Wyandotte County.

Because we find that Kansas courts may consider the negative consequences of a person's out-of-state criminal acts within Kansas *only if* the statutory language of that person's charged crime considered such negative consequences, the State's argument fails. As a result, we affirm the decision of the district court.

FACTUAL AND PROCEDURAL HISTORY

On March 11, 2017, Rozell and Saul Lopez were in a car accident in Missouri. When the accident occurred, nobody appeared to be injured. Moreover, the cars involved had only minor structural damage. Accordingly, Rozell and Saul decided to part after Saul, who was as fault, gave Rozell his car insurance information. Because Saul's father, Julio Lopez, insured Saul's car, Saul provided Rozell with Julio's insurance information. Julio, who lived in Wyandotte County, Kansas, insured the car through State Farm.

2

A couple of days later, on March 13, 2017, Rozell, who lived in Missouri, contacted State Farm, opening a bodily injury claim against Julio's policy. At this time, Rozell spoke to Daniel Rose, a State Farm claims representative who worked in Tennessee. Then, on March 22, 2017, Rozell faxed a hospital bill to Rose in Tennessee to support his claim. This hospital bill stated that on March 14, 2017, Rozell received $46,069 worth of medical services at a Missouri hospital.

Rose, however, questioned the authenticity of Rozell's hospital bill. Rose noted that the bill did not look official and the medical services charged seemed excessive for Rozell's alleged injuries. Additionally, evidence indicated that Rozell had made an identical claim with another insurance agency. Thus, Rose referred Rozell's claim to State Farm's Special Investigation Unit.

At this point, Michael Haire, a claims specialist in State Farm's Special Investigation Unit, began investigating the authenticity of Rozell's hospital bill. Haire worked from his State Farm office located in Sedgwick County, Kansas. And during his investigation, Haire and Rozell had several telephone conversations about Rozell's claim. It is unclear from Haire's testimony at the preliminary hearing whether Rozell ever presented false information directly to Haire. It appears their first conversation involved Rozell telling Haire that one of the two bills that had been submitted was not part of a claim related to the accident being investigated. In any event, the State does not rely on Rozell's conversations with Haire to allege any fraudulent activity in Kansas.

Ultimately, hospital records established that Rozell had received $46,069 worth of medical services on March 9, 2017—two days before the car accident. Thus, Haire concluded that Rozell altered the date on the hospital bill so State Farm would pay for medical services unrelated to his car accident with Saul.

3

Based on the preceding evidence, the State brought charges against Rozell in the Wyandotte County District Court. Specifically, the State charged Rozell one count of making false information contrary to K.S.A. 2017 Supp. 21-5824(a) and with one count of fraudulent insurance act contrary to K.S.A. 2017 Supp. 40-2,118(a), (e). The State listed State Farm as the victim of Rozell's crimes.

Rozell responded to the charges by moving to dismiss the State's charges against him for lack of jurisdiction. Rozell asserted that Kansas lacked jurisdiction to charge him with any crime because if he committed a crime, he did so in either Missouri or Tennessee. In making this argument, Rozell noted that he got into the car accident in Missouri, that he received medical treatment in Missouri, that he contacted State Farm from Missouri, and that he faxed the hospital bill to Rose in Tennessee.

Nevertheless, the State countered that Rozell was subject to prosecution under Kansas law. It then further countered that Wyandotte County was the proper venue for its prosecution. In making its argument, the State emphasized that Rozell's bodily injury claim was against Julio's State Farm insurance policy, and Julio lived in Wyandotte County, Kansas. Then, the State noted that because Julio lived in Kansas, his State Farm insurance policy complied with Kansas' insurance laws. Based on those facts, the State asserted that Rozell attempted to defraud a "Kansas insurance policy."

Next, the State pointed to K.S.A. 2017 Supp. 21-5106(b), which provides that Kansas courts have jurisdiction over a crime when (1) the proximate result of a constituent and material element of a person's offense occurs within the state, or (2) the proximate result of a substantial and integral part of a person's overall continuing criminal plan occurs within the state. According to the State, because Rozell's fraudulent actions affected a Kansas insurance policy, his crime also affected Kansas insurance policyholders who may endure policy rate increases because of Rozell's fraud. In turn, the State argued that under K.S.A. 2017 Supp. 21-5106(b)(3)'s proximate result jurisdiction

4

provision, Kansas had jurisdiction to charge Rozell with making false information and committing a fraudulent insurance act. Lastly, the State asserted that Wyandotte County was the proper venue for its prosecution because the Kansas insurance policy Rozell sought to defraud belonged to a Wyandotte County resident.

The district court held a hearing on Rozell's motion. Ultimately, the district court agreed with Rozell, ruling that Kansas lacked jurisdiction. In reaching this ruling, the district court explained that the statutes and caselaw the State relied on to argue that Kansas had jurisdiction to prosecute Rozell under K.S.A. 2017 Supp. 21-5106(b)(3)'s proximate result jurisdiction provision did not actually support its argument. Because the district court determined that it lacked jurisdiction over Rozell's case, it also implicitly ruled that Wyandotte County was the wrong venue for the State's prosecution.

The State timely appealed the district court's order granting Rozell's motion to dismiss for lack of jurisdiction.

ANALYSIS

On appeal, the State makes the same arguments about jurisdiction and venue that it made before the district court. That is, the State argues that Kansas may prosecute a person who attempts to defraud a "Kansas insurance policy." According to the State, a "Kansas insurance policy" is any insurance policy issued to a Kansas resident. The State contends that because a Kansas insurance policy belongs to a Kansas resident, the proximate result of a person's fraud on a Kansas insurance policy occurs in Kansas. Therefore, the State contends that Kansas has jurisdiction to prosecute all persons who seek to defraud a Kansas insurance policy under K.S.A. 2019 Supp. 21-5106(b)(3)'s proximate result jurisdiction provision. Because it contends Rozell sought to defraud a Kansas insurance policy, the State argues that the district court erred by granting Rozell's

5

motion to dismiss for lack of jurisdiction. And for this same reason, the State argues that Wyandotte County was the proper venue for its charges against Rozell.

Rozell has not filed an appellee's brief in response to the State's arguments. Accordingly, only the State's arguments are before this court.

*Our standard of review is de novo.*

Because this case involves whether the district court had subject matter jurisdiction over the case, we exercise de novo review. *State v. Woolverton*, 284 Kan. 59, 67, 159 P.3d 985 (2007). Moreover, to the extent we are required to interpret the statutes at issue here, our review is also de novo. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

*We review the law related to proximate result jurisdiction.*

Before considering the State's underlying jurisdiction argument, it is first important to consider generally when Kansas obtains jurisdiction to prosecute a person for criminal acts that were seemingly committed out of state.

A person is subject to prosecution and punishment under the laws of Kansas as set out in K.S.A. 2019 Supp. 21-5106. Subsection (a)(1) states that "[a] person is subject to prosecution and punishment under the law of this state if: The person commits a crime wholly or partly within this state." And subsection (b) defines what constitutes a crime committed "partly within this state." Subsection (b) provides:

> "A crime is committed partly within this state if: (1) An act which is a constituent and material element of the offense; (2) an act which is a substantial and

6

integral part of an overall continuing criminal plan; or; (3) the proximate result of such act, occurs within the state."

Therefore, for jurisdiction to exist under K.S.A. 2019 Supp. 21-5106(b), either the proximate result of a material element of a person's offense must occur in Kansas or the proximate result of a substantial and integral part of a person's overall continuing criminal plan must occur in Kansas.

Both our Supreme Court and this court have applied prior versions of K.S.A. 2019 Supp. 21-5106(b)(3) to determine whether Kansas had what has been termed "proximate result jurisdiction" to prosecute a defendant—a reference to the statutory language. The State has relied on three of those decisions—*State v. Jurdan*, 258 Kan. 848, 908 P.2d 1309 (1995), *State v. Johnson*, 40 Kan. App. 2d 397, 192 P.3d 661 (2008), and *State v. Sokolaski*, 26 Kan. App. 2d 333, 987 P.2d 1130 (1999). We will examine each.

In *Jurdan*, Jurdan bought a car from a dealership in Kansas, with the dealership holding a lien on Jurdan's newly purchased car. The dealership, however, later discovered that Jurdan had sold the car with a clear title in Missouri. Based on the preceding, the State of Kansas charged Jurdan with "impairing a security interest," which prohibited "'selling, exchanging, or otherwise disposing of any personal property subject to a security interest without the written consent of the secured party, with intent to defraud the secured party, where such sale . . . is not authorized by the secured party under the terms of the security agreement.'" 258 Kan. at 850. But the district court dismissed Jurdan's case, ruling that Kansas lacked jurisdiction to prosecute Jurdan since she sold the car with a clear title in Missouri.

Our Supreme Court reversed the district court. In doing so, the court first analyzed the plain language of the "impairing a security interest" statute. The court noted that the versions of the statute prohibiting impairment of a security interest that existed prior to

7

1994 concerned only the "*fate of the collateral*." 258 Kan. at 852. But the Legislature subsequently amended the statute with the heading "impairing a security interest." K.S.A. 1994 Supp. 21-3734(a)(2) (now K.S.A. 2019 Supp. 21-5830[a][2]). The court explained that because the current statute was entitled "impairing a security interest," it was clear that the Legislature meant for the crime of "impairing a security interest" to "concern[] not only . . . the fate of the collateral but also the resultant damage to the security interest." 258 Kan. at 852. Hence, the court determined that the impairment of a security interest was a central part of the crime of impairing a security interest.

The court then explained that "while the disposition of the vehicle, which was the collateral subject to the security interest, may have occurred out of state, the effect of that act was to impair the attached security interest held by the secured lienholder in . . . Kansas." 258 Kan. at 853. Accordingly, the court held that Kansas had proximate result jurisdiction to prosecute Jurdan for impairing a security interest: "The sale in Missouri [was] the proximate cause of the impairment of the lienholder's rights in Kansas under the security agreement." 258 Kan. at 854.

In *Johnson*, Johnson prevented her minor granddaughter from testifying in an upcoming Reno County, Kansas trial. Johnson, who lived in Colorado, hid her granddaughter in New Mexico with a relative. After nationwide search to find the granddaughter, Johnson was subsequently arrested in Kansas. She was charged with aggravated intimidation of a witness in Reno County, Kansas.

Although Johnson pleaded guilty as charged, she challenged the district court's jurisdiction on appeal. Specifically, she argued that Kansas could not prosecute her for aggravated intimidation of a witness because she committed none of the elements of aggravated intimidation of a witness within Kansas. The State countered that it had the authority to prosecute Johnson because Johnson had barred her granddaughter from testifying at a Kansas trial. This court agreed. 40 Kan. App. 2d at 399-400.

In affirming the district court, this court noted that the crime of aggravated intimidation of a witness requires a defendant to "knowingly and maliciously prevent[] or dissuad[e], or attempt[] to prevent or dissuade, any witness or victim *from attending or testifying at any civil or criminal trial*." (Emphasis added.) 40 Kan. App. 2d at 399 (citing K.S.A. 21-3832[a][1]). It then explained: "Johnson attempted to prevent the witness . . . from attending or testifying at [the] trial in Reno County. Thus, the proximate result of Johnson's unlawful act occurred in [Kansas]. Based on K.S.A. 21-3104[now K.S.A. 2019 Supp. 21-5106], the [district court] properly exercised its jurisdiction in convicting and sentencing Johnson." 40 Kan. App. 2d at 400.

Last, in *Sokolaski*, Sokolaski was convicted of criminal nonsupport in Kansas, where his ex-wife and child lived. On appeal to this court, Sokolaski argued that Kansas could not prosecute him for criminal nonsupport because Missouri issued his divorce and child support order. Nevertheless, this court rejected Sokolaski's argument. In doing so, this court explained that when determining whether Kansas has jurisdiction to prosecute through proximate result jurisdiction, courts "focus on the consequences within their borders of actions taken elsewhere." 26 Kan. App. 2d at 334. Because Sokolaski's child lived in Kansas, this court held that "it [was] clear that [Sokolaski's] criminal nonsupport occurred partly in Kansas and the proximate result of his actions (the failure to provide support for [his child]) occurred within the state." 26 Kan. App. 2d at 334.

This review of the relevant law concerning K.S.A. 2019 Supp. 21-5106(b)(3)'s proximate result jurisdiction provision reveals multiple problems with the State's broad position that Kansas may prosecute a person who attempts to defraud a Kansas insurance policy. There are two reasons we believe the State's analysis is wrong.

9

*The State fails to analyze the elements of the charged crimes.*

To begin with, the State misses the point on its proximate result jurisdiction argument by failing to analyze the elements of the charged offenses. To review, the *Jurdan*, *Johnson*, and *Sokolaski* courts decided whether proximate result jurisdiction existed by analyzing the elements of the defendant's crime under prior but similar versions of K.S.A. 2019 Supp. 21-5106(b). This is because whether proximate result jurisdiction exists hinges on the following:  (1) whether the proximate result of a material element of a person's offense occurred in Kansas, or (2) whether the proximate result of a substantial and integral part of a person's overall continuing criminal plan occurred in Kansas.

Here, however, the bulk of the State's argument involves Rozell's alleged attempt to defraud a "Kansas insurance policy." The State contends that Kansas should have proximate result jurisdiction to prosecute Rozell because insurance policies issued in Kansas are inextricably tied to Kansas. In making this argument, it notes the following: (1) that insurance policies issued in Kansas must comply with Kansas law; (2) that fraudulent claims against a Kansas insurance policy may result in the insurer increasing its policy rates on the Kansas policyowner; and (3) that fraudulent claims against a Kansas insurance policy may result in the insurer increasing its policy rates on all Kansans with insurance policies.

Yet, under K.S.A. 2019 Supp. 21-5106(b), the fact Rozell allegedly attempted to defraud a Kansas insurance policy is irrelevant in determining the existence of proximate result jurisdiction. Again, the relevant inquiry is (1) whether the proximate result of a material element of Rozell's alleged crimes occurred in Kansas, or (2) whether the proximate result of a substantial and integral part of Rozell's alleged overall continuing criminal plan occurred in Kansas. But the State never engages in this type of analysis. That is to say, the State never analyzes the elements of the making false information and

10

fraudulent insurance act statutes under K.S.A. 2019 Supp. 21-5106(b) to determine the existence of proximate result jurisdiction. In fact, the State only mentions its making false information and fraudulent insurance act charges against Rozell in passing.

Furthermore, the remainder of the State's proximate result jurisdiction argument hinges on a superficial comparison of its case to the *Jurdan* case. The State argues that its proximate result jurisdiction challenge is comparable to the proximate result jurisdiction challenge it successfully made in *Jurdan* by asserting the following:

> "In *Jurdan* and in this case, the defendants committed acts necessary to complete their respective crimes outside of Kansas. The purpose of both of these defendants' actions was to defraud a legal agreement, either a security interest or an insurance policy, located in Kansas. The proximate result of both acts was felt in Kansas as the security interest in *Jurdan* was rendered unenforceable, and the insurance policy in this case was subjected to a fraudulent claim. As in *Jurdan*, the proximate result of the Defendant's criminal acts was felt in Kansas. Under K.S.A. 21-5106(b)(3) and the reasoning in *Jurdan*, Kansas courts have jurisdiction over this case because the proximate result of the Defendant's criminal acts occurred in Kansas."

Thus, we can summarize the State's argument as follows: In *Jurdan*, our Supreme Court held that the proximate result of fraud involving a Kansas legal agreement occurred in Kansas. Here, Rozell allegedly attempted to defraud a Kansas legal agreement, i.e., Julio's Kansas insurance policy. Thus, Kansas has proximate result jurisdiction to prosecute Rozell because Rozell, like Jurdan, attempted to defraud a Kansas legal agreement.

Yet, as already discussed, our Supreme Court did not hold that Kansas had proximate result jurisdiction to prosecute Jurdan simply because it was Jurdan's goal to defraud a Kansas legal agreement. To the contrary, after analyzing the impairing a security interest statute, the court determined that based on its title, a key part of the

11

impairing a security interest statute was the impairment of the security interest. Because Jurdan's criminal act of selling the car with free title in Missouri impaired the security interest held by the dealership located in Kansas, the *Jurdan* court held that a proximate result of Jurdan's criminal act occurred within Kansas. 258 Kan. at 854.

Simply put, the plain language of K.S.A. 2019 Supp. 21-5106(b) states that proximate result jurisdiction determinations hinge on whether the proximate result of a material element of a person's offense occurred in Kansas or whether the proximate result of a substantial and integral part of a person's continuing criminal plan occurred in Kansas. But in this case, the State has not engaged in such analysis. Instead, the State asks this court to make a broad holding that Kansas has proximate result jurisdiction to prosecute any person who seeks to defraud a Kansas insurance policy (1) based on policy arguments that are only tangentially related to its charges against Rozell and (2) based on a superficial comparison of its case to the *Jurdan* case.

*The plain statutory language of the crimes charged does not support a finding of proximate cause jurisdiction.*

By failing to analyze the elements of the offenses charged, the State ignores the plain language of K.S.A. 2019 Supp. 21-5824(a)—the making false information statute—and K.S.A. 2019 Supp. 40-2,118(a)—the fraudulent insurance act statute. The plain language of those statutes does not support that Kansas has jurisdiction to prosecute persons just because their fraudulent acts involved a Kansas insurance policy. As a result, its proximate result jurisdiction argument is still unpersuasive.

K.S.A. 2019 Supp. 21-5824(a) defines making false information as follows:

"[M]aking, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account

12

with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action."

Thus, as applied to this case, the material elements of making a false information are as follows: (1) that Rozell made a document, (2) that Rozell falsified a material matter within that document, and (3) and that Rozell had an intent to defraud when making that document. In turn, for Kansas to have proximate result jurisdiction to prosecute Rozell for making false information, one of the following must be true: (1) The proximate result of a material element of Rozell's making false information charge occurred within Kansas, or (2) the proximate result of a substantial and integral part of Rozell's continuing criminal plan in the commission of making false information occurred within Kansas.

Meanwhile, K.S.A. 2019 Supp. 40-2,118(a) states:

"[A] 'fraudulent insurance act' means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto."

Accordingly, as applied to this case, the material elements of a fraudulent insurance act are as follows: (1) that Rozell presented a document to an insurer; (2) that Rozell presented this document knowing that it contained materially false information, (3) that Rozell presented this document in support of some insurance policy benefit, and

13

(4) that Rozell did the preceding with the intent to defraud. In turn, for Kansas to have proximate result jurisdiction to prosecute Rozell for committing a fraudulent insurance act, one of the following must be true: (1) The proximate result of a material element of Rozell's fraudulent insurance act charge occurred within Kansas, or (2) the proximate result of a substantial and integral part of Rozell's continuing criminal plan in the commission of a fraudulent insurance act occurred within Kansas.

Again, in its brief, the State never explains what material elements of making false information and fraudulent insurance act that Rozell committed out of state but which had consequences that occurred in Kansas. Nor does the State contend that the proximate result of some substantial and integral part of Rozell's alleged continuing plan in the commission of making false information and a fraudulent insurance act occurred in Kansas.

Even so, the State's argument emphasizes how "[*f*]*raud* on an insurance policy issued in Kansas affects not only the individual Kansas policyholder whose rates and coverage may be impacted, but it also affects the overall rates and coverages available to all Kansas residents." (Emphasis added.) Moreover, an "intent to defraud" is an element of both making false information and committing a fraudulent insurance act. Thus, under a very liberal interpretation of the State's argument, it seems the State believes that the proximate result of a material element of Rozell's crimes—the "intent to defraud" element of both crimes—occurred in Kansas because defrauding a Kansas insurance policy negatively affects Kansas insurance policyholders.

But our caselaw supports a narrower interpretation of the proximate result jurisdiction statute. When our Supreme Court determined that the State had proximate result jurisdiction to prosecute Jurdan for impairing a security interest, it did so because the impairing a security interest statute contemplated the resultant damage to security interest, and the damaged security interest was located in Kansas. *Jurdan*, 258 Kan. at

14

852-54. When this court determined that the State had proximate result jurisdiction to prosecute Johnson for aggravated intimidation of a witness, it did so because Johnson could not have been charged with this crime but for her intimidation of a witness set to testify in a Kansas trial. *Johnson*, 40 Kan. App. 2d at 400. And when this court determined that the State had proximate result jurisdiction to prosecute Sokolaski for criminal nonsupport, it did so because the crime of criminal nonsupport concerned the negative effects of nonsupport on the child, and Sokolaski's child lived in Kansas. *Sokolaski*, 26 Kan. App. 2d at 334. Hence, the *Jurdan*, *Johnson*, and *Sokolaski* courts held that Kansas had proximate result jurisdiction to prosecute the defendants because the negative effects of the defendants' actions were a key statutory part of the defendants' respective crimes.

Here, however, nothing within K.S.A. 2019 Supp. 21-5824(a) speaks to the resultant damage stemming from a forged document. That is, the plain language of the making false information statute does not contemplate the consequences of a person's criminal actions when making false information. It merely criminalizes the act of falsifying a document with the intent to defraud. The same is true for K.S.A. 2019 Supp. 40-2,118(a). Nothing within the plain language of the fraudulent insurance act statute addresses the resultant damage stemming from a fraudulent insurance act. It merely criminalizes the act of falsifying a document with the intent to defraud an insurer to obtain some insurance policy benefit.

And perhaps more significantly, like the making false information and fraudulent insurance act statutes, the impairing a security interest statute that our Supreme Court considered in *Jurdan* had an "intent to defraud" element. Once more, that statute stated that "impairing a security interest" was "selling, exchanging or otherwise disposing of any personal property subject to a security interest without the written consent of the

15

secured party, *with intent to defraud the secured party*, where such sale, exchange or other disposition [was] not authorized by the secured party under the terms of the security agreement." (Emphasis added.) K.S.A. 1994 Supp. 21-3734(a)(2). Nevertheless, when the court determined that Kansas had proximate result jurisdiction to prosecute Jurdan for impairing a security interest, it did not do so because Jurdan sought to defraud a security interest held by a Kansan.

That is to say, it did not do so because the proximate result of Jurdan's intent to defraud occurred in Kansas. In fact, the court mentioned the impairing a security interest's "intent to defraud" element just once, when it quoted the impairing a security interest statute. Instead, as discussed at length already, our Supreme Court determined that Kansas had proximate result jurisdiction to prosecute Jurdan because her crime was entitled "impairing a security interest," meaning a statutory part of her crime concerned the "resultant damage to the security interest." *Jurdan*, 258 Kan. at 852.

In short, the *Jurdan* court's disregard of the "intent to defraud" element of the impairing a security interest statute is instructive. It supports the conclusion that when considering a crime with an "intent to defraud" element, the proximate result of a person's "intent to defraud" does not occur within Kansas just because that person sought to defraud a legal instrument belonging to a Kansas resident. In consequence, the *Jurdan* court's failure to reach this holding undermines any argument that the proximate result of Rozell's alleged commission of the "intent to defraud" element of both crimes occurred in Kansas just because fraud on a Kansas insurance policy negatively affects Kansas insurance policy holders.

This analysis is further bolstered by another case upon which the State relies, *Woolverton*, 284 Kan. 59. In *Woolverton*, Woolverton challenged his criminal threat conviction for lack of subject matter jurisdiction. He asserted that Kansas could not prosecute him for a threat he made by telephone from his Missouri apartment to his ex-

16

girlfriend, who heard the threat by phone in her Kansas home. Our Supreme Court disagreed, first noting that an element of criminal threat was communication of the threat. 284 Kan. at 69. It then determined that the district court properly exercised subject matter jurisdiction because Woolverton committed this material element of criminal threat within Kansas:

> "Because the offense of criminal threat requires a communication, which involves both the declaration of a threat and the perception and comprehension of the threat, there are two acts comprising the constituent and material elements of the offense—speaking and perceiving. Although Woolverton spoke the threat in Missouri, [the victim] perceived the threat at her home in Johnson County, Kansas. Thus, an act comprising a constituent and material element of criminal threat was committed in Kansas." 284 Kan. at 70.

The *Woolverton* court did not determine Kansas had jurisdiction to prosecute Woolverton via proximate result jurisdiction as the State asserts. Instead, the *Woolverton* court determined that Woolverton committed a material element of his criminal threat in Kansas even though he was not within Kansas when he uttered the criminal threat. 284 Kan. at 70.

Thus, to summarize, Kansas does not have proximate result jurisdiction to prosecute Rozell for making false information or committing a fraudulent insurance act just because Rozell allegedly intended to defraud a Kansas insurance policy. When determining proximate result jurisdiction, Kansas courts may consider the negative consequences of a person's out-of-state criminal acts within Kansas *only if* the statutory language of that person's charged crime considered such negative consequences. Here, however, neither the making false information statute nor the fraudulent insurance act statute considered such negative consequences. As a result, the State's argument is not persuasive.

17

Accordingly, we affirm the district court's dismissal of the State's charges against Rozell for lack of jurisdiction. In turn, we need not consider the State's venue argument.

Affirmed.