IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,094

STATE OF KANSAS,
*Appellant*,

v.

IVAN ROZELL,
*Appellee*.


SYLLABUS BY THE COURT


1.

Under K.S.A. 2020 Supp. 21-5106(a)(1) and (b)(3), a Kansas court has jurisdiction over a crime partly committed in Kansas by a criminal actor who commits either (1) an act that constitutes a constituent and material element of the offense or (2) an act that is a substantial and integral part of an overall continuing criminal plan and the act causes an effect or consequence in Kansas close enough in time or cause to be a proximate result. Jurisdiction may arise even if the statutory language of the charged crime did not consider the result that occurred in Kansas.


2.

Under K.S.A. 2020 Supp. 22-2902(3), the State's burden of proof at a preliminary hearing is not proof beyond a reasonable doubt, only probable cause. Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's

1

guilt. To determine whether the State has met this burden, a preliminary hearing judge does not pass on credibility, and, when evidence conflicts, the judge must accept the version of the testimony most favorable to the State. On appeal, we review the preliminary hearing judge's probable cause determination de novo, meaning we have unlimited review.

3.

On the facts of this case, the defendant's out-of-state actions that led to an investigation in Kansas of an insurance claim on a Kansas insurance policy held by a Kansas resident caused a consequence or effect in Kansas close enough in time or cause to the alleged criminal acts of insurance fraud and making a false information to qualify as a proximate result that allows Kansas to exercise jurisdiction.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 570, 472 P.3d 612 (2020). Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed April 22, 2022. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were on the briefs for appellant.

No brief was filed by the appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: At the heart of this appeal is whether Kansas has territorial jurisdiction to prosecute Ivan Rozell for insurance fraud and making a false information.

It is undisputed that Rozell committed no acts related to those charges while physically in Kansas. Given that, Rozell argues the Wyandotte County District Court lacked jurisdiction to prosecute him because Kansas laws have no extraterritorial effect.

Yet crimes sometimes involve multistate conduct. And the United States Supreme Court has recognized that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the defendant] had been present at the effect." *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S. Ct. 558, 55 L. Ed. 735 (1911). Kansas has a statute that facilitates the jurisdiction contemplated in *Strassheim* by allowing "proximate result" jurisdiction, K.S.A. 2020 Supp. 21-5106. Relying on this statute, the State argues Rozell's out-of-state actions caused proximate results within Kansas' territorial boundaries.

Both the district court and the Court of Appeals disagreed with the State. See *State v. Rozell*, 58 Kan. App. 2d 570, 472 P.3d 612 (2020). Upon review of those decisions, we conclude the district court and the Court of Appeals erred in interpreting and applying K.S.A. 2020 Supp. 21-5106. We therefore reverse the decision of both courts and remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Rozell was in a minor vehicle collision with Saul Lopez at an intersection in Kansas City, Missouri. Lopez did not obey the right of way and hit Rozell's vehicle, but any contact between the vehicles was minimal. Lopez gave Rozell insurance information. Rozell told Lopez he was fine and declined Lopez' offer to call police.

Lopez' father held title to and insured the vehicle Lopez was driving at the time of the accident. His father lived in Kansas City, Kansas, and was insured under a Kansas insurance policy issued by State Farm Insurance through an agent based in Kansas. Lopez also lived in Kansas City, Kansas.

Two days after the accident, Rozell called State Farm to report a claim. State Farm assigned the claim to a State Farm representative in Tennessee. The representative contacted Rozell to request supporting documentation; Rozell faxed a copy of a hospital bill to State Farm. The bill was for services received at Research Medical Center in Missouri.

The State Farm representative thought the amount of the bill—around $52,000—was disproportionate to the severity of the collision. He contacted Rozell and asked whether Rozell had submitted the correct document. Rozell confirmed he had. The representative transferred the claim to a special investigations department at State Farm.

The special investigator, Michael Haire, was based out of a State Farm office in Kansas. Haire reviewed the original medical bill Rozell had submitted to State Farm and a second one Rozell sent after his initial claim. Haire determined the first bill was for medical expenses incurred two days before the vehicle collision. Haire documented a phone call with Rozell, during which Rozell informed Haire that the first and larger of the two bills was unrelated to the traffic collision, but the second medical bill for about $6,000 was the correct bill. Haire re-sent, or caused to be re-sent, an authorization form that Rozell then returned to allow State Farm to obtain his medical records. Haire also testified State Farm made an appointment to speak to the insured and get photos of the insured's vehicle to compare the damage with Rozell's vehicle. Haire did not specify

4

where this appointment occurred. When asked about the effect Rozell's attempted claim might have on Lopez' insurance policy, Haire testified he did not know.

A records custodian for Research Medical Center also reviewed the original bill and noticed its discharge date did not match the hospital records.

State Farm declined to pay Rozell's claim and submitted a fraud report to the Kansas Insurance Department. The State then charged Rozell with insurance fraud under K.S.A. 2020 Supp. 40-2,118(a) and (e) and making a false information under K.S.A. 2020 Supp. 21-5824(a) and (b).

At a preliminary hearing, the State presented four witnesses whose testimony supported the facts outlined above. The preliminary hearing judge found probable cause to bind over Rozell for trial for insurance fraud and making a false information. The judge also denied Rozell's motion to dismiss for lack of jurisdiction.

Rozell then filed a second motion to dismiss in which he argued "there was insufficient evidence presented for the court to find probable cause." As he had in his first motion, he argued the State had not established a basis for jurisdiction in Kansas. In making the argument, Rozell focused on provisions about the location of a trial found in the Kansas Constitution and Kansas statutes. See Kansas Constitution Bill of Rights, § 10 (criminal defendant entitled to trial in the county or district in which offense committed); K.S.A. 22-2602 (same); K.S.A. 22-2603 (prosecution may occur in any county in which an act required for commission of crime occurs even if other acts required to complete the crime occurred in another county).

5

A different judge than the one who heard the preliminary hearing conducted a hearing on Rozell's second motion. The State focused on the fact Rozell made the claim against a Kansas regulated insurance policy issued to a Kansas resident living at an address in Wyandotte County. Rozell countered that the State failed to present evidence that his conduct caused a proximate result that impacted the policy or the policyholder. During the motion hearing, the judge observed he would have to extend Kansas caselaw to find jurisdiction and he did not believe the Legislature had provided for that extension. The judge granted the motion to dismiss based on lack of jurisdiction and without separately making findings or conclusions of law about Rozell's venue arguments. Rozell's appointed counsel then moved to withdraw, and the judge granted that motion.

The State appealed arguing Kansas courts had jurisdiction under K.S.A. 2020 Supp. 21-5106. Rozell did not file briefs or appear during the appeal. The Court of Appeals affirmed the dismissal, holding the State had not established jurisdiction. It did not address venue. *Rozell*, 58 Kan. App. 2d 570.

The State timely petitioned for review, which this court granted. This court's jurisdiction is proper under K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions) and K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

The issue presented to the district court was whether the State presented sufficient evidence at the preliminary hearing to establish probable cause that Kansas had jurisdiction under K.S.A. 2020 Supp. 21-5106(a)(1) and (b)(3). Resolving this issue

6

requires us to interpret these provisions. We then must examine each charge and consider how the evidence presented at the preliminary hearing fits with those jurisdictional provisions and finally determine whether the State met its burden at the preliminary hearing.

1. *Legal framework for proximate cause jurisdiction*

We first consider the legal framework for the parties' arguments.

As noted, Rozell focused on constitutional and statutory provisions about a defendant's right to have a trial in the county or district where the crime, or one or more elements of the crime, were committed. Citing the Kansas Constitution Bill of Rights, § 10, which provides that a criminal defendant is entitled to trial in the county or district in which an offense is committed, he argued to the district court judge that Kansas could not prosecute him for conduct outside Kansas. But he cited no authority holding this provision prevented the exercise of jurisdiction by a state in which a crime was partially committed. And substantial authority exists allowing the exercise of jurisdiction by any state in which a crime is partially completed.

This authority includes cases applying the Sixth Amendment to the United States Constitution, which similarly provides the right to trial in "the state and district wherein the crime shall have been committed." Consistent with *Strassheim*, 221 U.S. at 285, the United States Supreme Court has held that this Sixth Amendment provision does not defeat a state's territorial jurisdiction over a crime partly committed in multiple states. See, e.g., *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281, 119 S. Ct. 1239, 143 L.

Ed. 2d 388 (1999) ("'[W]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.'").

The State argues Rozell partly committed the crimes in Kansas. To support its argument that Kansas has jurisdiction in those circumstances, it points to provisions relating to a court's jurisdiction, beginning with the Kansas Constitution, which grants district courts jurisdiction as provided by law. Kan. Const. art. 3, § 6(b); K.S.A. 20-301. Under the authority of this provision, the Legislature has enacted civil and criminal statutes that define that jurisdiction, including the criminal jurisdiction statute at issue, K.S.A. 2020 Supp. 21-5106 and, more specifically, subsections (a)(1) and (b)(3) of that statute.

K.S.A. 2020 Supp. 21-5106(a)(1) grants jurisdiction to Kansas courts if a defendant commits "a crime wholly or partly" within Kansas. And subsection (b) sets out various circumstances that constitute committing a crime partly in Kansas:

"(b) A crime is committed partly within this state if:
    (1) An act which is a constituent and material element of the offense;
    (2) an act which is a substantial and integral part of an overall continuing
        criminal plan; or
    (3) *the proximate result of such act, occurs within the state.*" (Emphasis added.)

Interpreting this provision, the Court of Appeals panel held that "Kansas courts may consider the negative consequences of a person's out-of-state criminal acts within Kansas *only if the statutory language of that person's charged crime considered such negative consequences.*" (Emphasis added.) *Rozell*, 58 Kan. App. 2d at 571. The State

8

argues to us that the panel added a requirement to the statute when it used the emphasized words.

This presents us with an issue of statutory interpretation, a question of law that appellate courts consider de novo. This means this court grants no deference to the district court's interpretation of K.S.A. 2020 Supp. 21-5106 or to that of the Court of Appeals. Instead, like those courts, we examine whether the Legislature's words are plain and unambiguous when given their ordinary meaning. If they are, we apply the Legislature's words as written. *State v. Darkis*, 314 Kan. 809, 811, 502 P.3d 1045 (2022).

Applying that standard, we agree with the State that the Court of Appeals erred by adding a requirement not found in the plain language of K.S.A. 2020 Supp. 21-5106.

To explain how we reach that conclusion, we start by examining the ordinary meaning of the phrase "the proximate result of such act," and in doing so we note the Legislature's use of the definite article "the." Subsection (b)(3)'s use of a definite article contrasts to the wording of (b)(1) and (b)(2) which use the indefinite article "an" before the word "act," and its reference to "such act" points back to subsection (b)(1) and (b)(2). See *State v. Henning*, 289 Kan. 136, 140, 209 P.3d 711 (2009) ("'A' [or 'an'] is often referred to as an indefinite article, while 'the' is denominated a definite article. See Garner's Modern American Usage 1, 785 [2nd ed. 2003]."). And "'[t]he' is 'used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance.'" 289 Kan. at 140 (quoting Merriam Webster's Collegiate Dictionary 1294 [11th ed. 2003]).

9

The definite article combined with the specific reference to "such act" thus conveys that any proximate result must be tied to subsections (b)(1) and (b)(2). Subsection (b)(1) describes "[a]n act which is a constituent and material element of the offense," and subsection (b)(2) describes "an act which is a substantial and integral part of an overall continuing criminal plan."

In other words, for a Kansas court to have jurisdiction under K.S.A. 2020 Supp. 21-5106(b)(3), there must be a direct connection or nexus between the defendant's act or acts outside Kansas and the result in Kansas. The Legislature's use of the word "result" instructs us to look for the consequence or effect in Kansas caused by (1) an act that constitutes a constituent and material element of the offense or (2) an act that is a substantial and integral part of an overall continuing plan. And the result must be close enough in time or cause to the alleged criminal acts to qualify as "the proximate result." See Black's Law Dictionary 1481, 1573, 381 (11th ed. 2019) (defining "proximate" as "immediately before or after" or "[v]ery near or close in time or space"; "result" when used as a noun as "[a] consequence, effect or conclusion"; and "consequence" as "[a] result that follows as an effect of something that came before").

On top of these requirements, which arise from the plain language of the statute, the Court of Appeals panel read this italicized language into the statute: "Kansas courts may consider the negative consequences of a person's out-of-state criminal acts within Kansas *only if the statutory language of that person's charged crime considered such negative consequences*." (Emphasis added.) *Rozell*, 58 Kan. App. 2d at 571. It concluded our caselaw supports this "narrower interpretation of the proximate result jurisdiction statute." 58 Kan. App. 2d at 581 (discussing *State v. Jurdan*, 258 Kan. 848, 908 P.2d 1309 [1995]; *State v. Johnson*, 40 Kan. App. 2d 397, 192 P.3d 661 [2008]; *State v.*

10

*Sokolaski*, 26 Kan. App. 2d 333, 987 P.2d 1130 [1999]). We disagree for at least three reasons.

First, this reading nullifies subsection (b)(2), which provides that the result felt in Kansas can result from "an act which is a substantial and integral part of an overall continuing criminal plan." Committing acts that continue a criminal plan can be wide ranging and untethered from elements of the crime. See *State v. Rimmer*, 877 N.W.2d 652 (Iowa 2016) (holding Iowa courts had jurisdiction over defendants who staged an automobile accident in Chicago and then began acts leading to insurance fraud charge by providing false information on repair estimates in Wisconsin and Illinois and placing phone calls from those states that deceived the Wisconsin insurer's employee in Iowa to authorize payment on false claims from the insurer's Wisconsin bank account).

Second, the Legislature added subsection (b)(2) to K.S.A. 2020 Supp. 21-5106 in 2010, after the three court decisions cited by the Court of Appeals. L. 2010, ch. 136, § 6. The district court judge discussed the same cases. He pointed out those cases dealt with harm reflected in the elements of the charged crimes, and he expressed concern the prosecution of Rozell in Kansas would extend this caselaw further than intended by the Legislature. In announcing his decision that the court lacked jurisdiction, the judge stated that such an expansion was a policy issue that needed to come from the Legislature. Neither the district court nor the Court of Appeals acknowledged the statutory amendment postdating the cases. Yet that amendment expands the scope of proximate result jurisdiction.

Before the 2010 amendment, the proximate result provision read: "An offense is committed partly within this state if either an act which is a constituent and material

11

element of the offense, or the proximate result of such act, occurs within the state." K.S.A. 21-3104(2). Thus, at the time of those decisions, the result of an act had to have a nexus to an element of the offense. With the addition of subsection (b)(2), this is no longer true. By adding this provision, the Legislature announced its policy decision to expand proximate result jurisdiction.

The third reason we disagree with the Court of Appeals and the district court arises from distinctions between the crimes charged against Rozell and those charged in the cases cited by the Court of Appeals and district court. The relied on cases discuss elements of the crimes of impairment to a security interest, intimidating a witness, and failing to support a child. In each case, the harm felt in Kansas—the impaired security interest held by a Kansas lienholder, the intimidation of a witness subpoenaed to testify in a Kansas trial, and the failure to support a child residing in Kansas—was the harm that was the object of the statute and that was described as an element of the charged crime. See *Rozell*, 58 Kan. App. 2d at 575-77 (discussing *Jurdan*, 258 Kan. at 852 ["K.S.A. 1994 Supp. 21-3734 is concerned *not only with the fate of the collateral* but also the resultant damage to the security interest."]; *Johnson*, 40 Kan. App. 2d at 399, 400 [Under "K.S.A. 21-3832(a)(1), intimidation of a witness or victim is knowingly and maliciously preventing or dissuading, or attempting to prevent or dissuade, any witness or victim from attending or testifying at any civil or criminal trial" and thus defendant "partly committed [the offense] within this state if the proximate result of the act, i.e., preventing [the alleged victim] from testifying, occurred within this state."]; *Sokolaski*, 26 Kan. App. 2d at 334 [quoting elements in K.S.A. 21-3605(a)(1) for offense of nonsupport of a child that prohibit a parent from failing, neglecting or refusing to "'provide for the support and maintenance of the parent's child in necessitous circumstances'" and holding "appellant's

12

criminal nonsupport occurred partly in Kansas and the proximate result of his actions (the failure to provide support for [child]) occurred within the state"]).

In contrast, the State charged Rozell with crimes that do not necessarily require someone, or something, suffer harm. A crime occurs under K.S.A. 2020 Supp. 40-2,118(a) (insurance fraud) and K.S.A. 2020 Supp. 21-5824 (making a false information) if a defendant commits specific acts with the requisite intent even if the acts fail to accomplish the defendant's ultimate objective. In other words, Rozell can be found guilty of both charged crimes even though the insurance company denied his claim. See K.S.A. 2020 Supp. 40-2,118(a); K.S.A. 2020 Supp. 21-5824.

The effect of the Court of Appeals' holding would be to prevent prosecution of out-of-state defendants for any crime that does not include an element that requires an actual loss by a victim or another type of harm. This impediment to prosecution would arise because the Court of Appeals added words to the statute, which courts do not do when interpreting statutes except in limited situations after finding a statutory ambiguity. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

We hold that, under K.S.A. 2020 Supp. 21-5106(a)(1) and (b)(3), a Kansas court has jurisdiction over a crime partly committed in Kansas by a criminal actor who commits either (1) an act that is a constituent and material element of the offense or (2) an act that is a substantial and integral part of an overall continuing criminal plan and that act causes an effect or consequence in Kansas close enough in time or cause to be a proximate result. Jurisdiction may arise even if the statutory language of the charged crime did not consider the result that occurred in Kansas.

13

Having reached that holding, we pause to note an argument the State made through a notice of supplemental authority filed under Kansas Supreme Court Rule 6.09 (2021 Kan. S. Ct. R. at 40). In the filing, the State points out the Legislature recently amended K.S.A. 2020 Supp. 21-5106 to add subsection (h). The amendment added a definition of proximate result: "As used in this section, 'proximate result' means any logical effect or consequence of such act regardless of whether the statute governing the charged offense considers the specific effect or consequence of such act." L. 2021, ch. 103, § 4.

Citing *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458-59, 264 P.3d 102 (2011), the State encourages us to rely on this amendment, even though the Legislature enacted it after Rozell allegedly committed the charged offenses and after the rulings that prompt this appeal. Given our holding, we find no need to analyze whether such a reliance would be appropriate.

We now turn to whether the evidence at the preliminary hearing was sufficient to establish a proximate result in Kansas related to each of the charged offenses.

2. *Sufficiency of evidence*

As we consider the sufficiency of the evidence, we note that the State did not separately discuss this step of the analysis and offered no standard of review. Nor did the Court of Appeals. Yet Rozell's motion presented a sufficiency question, and we view that question as a necessary step of our analysis. We proceed with stating our standard of review despite argument because our standard of review at the preliminary hearing stage is well established.

14

Under K.S.A. 22-2902(3), the State's burden of proof at a preliminary hearing is not proof beyond a reasonable doubt, only probable cause. *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012). "'Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" 293 Kan. at 734. To determine whether the State has met this burden, a preliminary hearing judge does not pass on credibility, and, when evidence conflicts, the judge must accept the version of the testimony most favorable to the State. *State v. Wilson*, 267 Kan. 530, 535, 986 P.2d 365 (1999). On appeal, we review the preliminary hearing judge's probable cause determination de novo, meaning we have unlimited review. 267 Kan. at 534.

We will consider this standard in the context of each count.

2.1     *Insurance fraud*

Count I charged Rozell with insurance fraud. K.S.A. 2020 Supp. 40-2,118(a) defines the elements of insurance fraud as charged by the State:

> "For purposes of this act a 'fraudulent insurance act' means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain

15

materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto." K.S.A. 2020 Supp. 40-2,118(a).

As relevant to the charge against Rozell, K.S.A. 2020 Supp. 40-2,118(a) can be summarized as requiring that a person (1) communicates information to an insurer, here communications about medical records and bills alleged to be related to treatment for injuries incurred in the automobile accident; (2) knows the communication contains materially false information, here, for example, the alleged alteration of the date on which Rozell received medical care; (3) submits the false information in support of an insurance claim or benefit or insurance application, here Rozell's claim against Lopez' father's insurance; and (4) acts with the intent to defraud, which a reasonable person might infer from Rozell's submission of the allegedly altered bill.

The State argues that "it is indisputable that the insurance company that issued the policy is harmed when it is subject to a fraudulent claim." At the motion hearing, Rozell countered by arguing the State presented no evidence of this harm or, at least, of any harm occurring in Kansas. We agree that the evidence presented during the preliminary hearing did not directly document that harm. But it did establish a proximate result felt within Kansas. Haire, State Farm's investigator in Kansas, testified to steps he took in Kansas to investigate the claim, which included interviews with Lopez and Lopez' father and taking photographs of the damage to the car Lopez drove. The referral of the fraud investigation to the Kansas investigator and the follow-up appointment with the Kansas insured both occurred within one month of the accident and directly flowed from Rozell's submission of paperwork documenting his claim. And these actions were integral to State Farm's review of Rozell's claim.

16

Thus, a reasonable inference drawn in the light most favorable to the State is that Rozell's submission of an allegedly fraudulent claim was an act that caused proximate results in Kansas. For example, it caused the insured and State Farm to expend resources during an investigation of the allegedly fraudulent claim. This evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief Rozell's actions caused the proximate result to State Farm in Kansas. *Washington*, 293 Kan. at 733-34 (stating probable cause standard).

### 2.2. *Making a false information*

We now examine whether there is evidence of a proximate result in Kansas arising from Rozell allegedly making a false information.

K.S.A. 2020 Supp. 21-5824 defines making a false information as:

"making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action."

The statute describes three essential elements:  making, generating, distributing, or drawing a document, or causing such act; knowing the information is false or materially misrepresents information or is not what it purports to be; and with intent to defraud, obstruct, or induce action.

17

As applied to this case, the State alleges Rozell violated the statute by (1) making, generating, or distributing a document, here the faxed medical information, (2) knowing he had included false statements or representations about a material matter, here any medical services received and amounts paid for the treatment of injuries resulting from the accident, and (3) acting with the intent to defraud. And K.S.A. 2020 Supp. 21-5106(b)(3) instructs us to find jurisdiction if any of these constituent elements had a consequence or effect in Kansas with sufficient connection to the act to constitute the proximate result.

The evidence at the preliminary hearing was sufficient to establish the allegedly altered paper made its way to Kansas where the investigating agent drew conclusions about whether State Farm should pay or deny Rozell's claim. The evidence could lead a reasonable person to conclude that Rozell tried to persuade State Farm to rely on the altered paper and pay his claim made against a Kansas policy issued to a Kansas resident. See *Rimmer*, 877 N.W.2d 652 (holding Iowa courts had jurisdiction over defendants charged with insurance fraud who called Wisconsin insurer's employee in Iowa to authorize payment on false claims from the insurer's Wisconsin bank account, even though defendants did not know the employee in Iowa).

This evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief Rozell's actions led to the consequence or result in Kansas of attempting to influence Haire to approve Rozell's claim. *Washington*, 293 Kan. at 733-34 (stating probable cause standard); see also *United States v. Bocachica*, 57 F. Supp. 3d 630, 634 (E.D. Va. 2014) (holding prosecution was not inherently unfair "because the defendant committed the type of crime for which it was

18

reasonable to expect he would be prosecuted 'somewhere' for his clearly illegal conduct"); *Rimmer*, 877 N.W.2d at 667 (same).

### 3. *Jurisdiction*

This brings us to the last step of combining the legal standard and the facts to determine whether the State met its preliminary hearing burden to show it had jurisdiction to move forward with the prosecution. Appellate courts apply a de novo standard of review to the ultimate question of whether jurisdiction exists because that conclusion is treated as a question of law. See *State v. Smith*, 309 Kan. 977, 982-83, 441 P.3d 1041 (2019).

We hold the State presented sufficient evidence to establish probable cause that Rozell's actions of submitting an allegedly false claim, which he supported with allegedly altered documents, with the alleged intent to defraud State Farm caused a consequence or effect in Kansas close enough in time or cause to the alleged criminal acts of insurance fraud and making a false information to qualify as a proximate result that allows Kansas to exercise jurisdiction.

We do not address venue because no lower court ruled on the sufficiency of evidence regarding venue. We thus have no decision to review on appeal.

19

CONCLUSION

For all these reasons, we find the State established probable cause to exercise territorial jurisdiction over Rozell for both charged counts. We accordingly reverse the district court and the Court of Appeals and remand for further proceedings.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded.

STANDRIDGE, J., not participating.